No. 91-364

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

STATE OF MONTANA,

        Plaintiff and Respondent,

  -vs-

KENNETH YOTHER,

        Defendant and Appellant.

FILED

MAY - 1 1992

Smith
STATE OF SUPREME COURT
OF MONTANA

APPEAL FROM:  District Court of the Sixteenth Judicial District,
In and for the County of Custer,
The Honorable Joe L. Hegel, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Marcey Femling Schwarz; Schwarz & Custafson, P.C.,
        Billings, Montana

    For Respondent:

        Hon. Marc Racicot, Attorney General,
        Patricia J. Jordan, Assistant Attorney General,
        Helena, Montana
        Keith Haker, Custer County Attorney
        Miles City, Montana

Submitted on Briefs:  March 26, 1992

Decided:  May 1, 1992

Filed:

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

The District Court for the Sixteenth Judicial District, Custer County, denied defendant's motion to withdraw his plea of guilty to the offense of sexual intercourse without consent. Defendant appeals. We affirm.

The issues for our consideration are:

1. Did the District Court abuse its discretion in denying defendant's motion to withdraw his plea of guilty?

2. Were defendant's constitutional rights to due process violated by the denial of his motion to withdraw his plea of guilty?

The State charged defendant, Kenneth Yother, with sexual intercourse without consent, sexual assault, and incest, all committed against the defendant's thirteen-year-old daughter, B.Y. The affidavit in support of the information stated:

> The Court is further informed that through investigation it was determined that BY, a minor youth, was at her residence tending to other children when the Defendant, who was known to the youth, came to her residence at approximately 3:00 o'clock [sic] A.M. and invited her to go for a ride in an automobile which he was intending to purchase. The minor youth, BY, accepted the invitation for the ride and went with the Defendant. The Defendant left the neighborhood and drove to a secluded area where he parked the vehicle. BY requested that he take her back to her residence. This request was ignored and the Defendant began talking about young girls that he had sexual contact with when he was younger. BY attempted to leave the vehicle with the intent to walk home but was stopped by the Defendant. He grabbed her by the hair and pulled her face down to the area of his crotch, where his pants were open, and she pulled away. The Defendant proceeded to pull her closer, pulling off her boot and one of her pants legs. The Defendant held BY down, and, according to BY, he was able to penetrate her vagina with his penis.

1

At the arraignment, the District Court advised the defendant of the charges against him, the maximum penalties, appointed an attorney and advised defendant of his constitutional rights. The court further informed the defendant:

> You should be advised that if you make a plea agreement with the County Attorney, that that would be an agreement between you and the County Attorney and for you to enter a certain plea and for the County Attorney to make a certain recommendation to the Court. The Court is not a party to any such agreement and the Court would not be bound by such an agreement. Should the Court accept a plea of guilty pursuant to an agreement or otherwise the Court would contain [sic] the right to sentence up to maximum allowable by law. Also, you would not have a right to withdraw your guilty plea. . . .

The defendant pled not guilty to all charges.

On January 21, 1991, the defendant, his attorney, the County Attorney, B.Y. the victim, and the mother of the victim executed the Acknowledgment of Rights and Plea Agreement. In the agreement defendant acknowledged his right to challenge the sufficiency of the information, his right to object to any evidence obtained in violation of law, his right to a speedy and public trial by jury at which he had the right to effective assistance of counsel, the right to confront and cross-examine witnesses, the right to testify, the right to call and have witnesses testify, the right not to be compelled to incriminate himself, the right to have charges proved beyond a reasonable doubt, and the right to appeal a finding of guilty. The agreement contained the maximum penalties for sexual intercourse without consent, sexual assault, and incest. He agreed that by pleading guilty he would waive all the rights above referred to. He acknowledged he had been given ample time

2

and opportunity to discuss the case with his attorney and received the full benefit of that attorney's advise, and that he was satisfied with the services of the attorney. He also acknowledged that he was not suffering from any mental disease or disability; that he was not under the influence of alcohol, drugs or medication; and that he had not been threatened, coerced or otherwise intimidated or influenced in any way. The agreement then contained the following specific paragraphs regarding the defendant:

10. I have entered into this agreement freely and voluntarily and with full knowledge of its terms and conditions.

11. I understand that a plea bargain agreement is an <u>agreement between a defendant and a prosecutor</u> that in exchange for a particular plea the prosecutor will recommend a particular sentence.

12. I understand that the Court may not participate in the making of such an agreement nor is the Court bound by the agreement.

13. I understand that on my plea of guilty alone I could lawfully be sentenced to the maximum punishment authorized for the offense(s) to which I plead guilty and that <u>the recommendation of the prosecuting attorney in no way binds the Court when imposing sentence</u>.

14. I understand that the sentence to be imposed is within the sole discretion of the sentencing judge and that the State does not make any promise or representation as to what the sentence will be.

15. I understand that <u>if the Court does not impose the sentence recommended by the prosecutor, the Court is not required to allow me to withdraw my plea of guilty</u>. (emphasis added).

The defendant then agreed to plead guilty to the offense of sexual intercourse without consent as follows:

18. Pursuant to §46-12-204, MCA, and conditioned

3

upon the understandings specified below, I agree to plead guilty to the offense of Sexual Intercourse Without Consent, a felony, as alleged in the Amended Information, on the following basis:

    a. That the County Attorney will recommend imprisonment in the Montana State Prison for five (5) years. Three (3) years of said sentence shall be determinate and must be served in its entirety in the Montana State Prison, less credit for time spent in the Custer County Jail.

    b. The Defendant shall not be entitled to early parole or conditional release.

    c. While at the Montana State Prison, the Defendant must complete the Intensive Two Year Sex Offender Program.

    d. Upon release from the Montana State Prison, the Defendant shall be placed on Parole for a period of two (2) years.

The agreement further provided in detail that the "prosecution" would abide by the terms of the agreement throughout all proceedings, including sentence review and parole, and that the prosecution would not attempt to alter or renegotiate the terms of the agreement. The agreement stated that the State agrees that the defendant shall be entitled to withdraw from the agreement subsequent to the entry of a guilty plea in the event the State fails to perform its obligations pursuant to the agreement.

After a hearing, the District Court accepted defendant's plea of guilty to the offense of sexual intercourse without consent, resulting in the dropping of the charges of sexual assault and incest. The court ordered defendant to undergo a psychosexual evaluation pursuant to § 46-18-111, MCA.

Defendant was evaluated by Pete Bruno, a licensed professional counselor. Mr. Bruno concluded that defendant completely denied any problem with deviant sexuality, that the defendant could not be accepted into outpatient therapy, and that Bruno could not

4

recommend him for placement in the Phase II (Phase II requires a court order) program at the prison.

Prior to sentencing, defendant moved to withdraw his guilty plea because: (1) following the plea he was ordered to complete a Sex Offender Evaluation; (2) the defendant "hope[d]" he would be allowed to withdraw his guilty plea if the Judge did not follow the County Attorney's recommendations; (3) the defendant entered his plea out of "fear" of what a jury might do; and (4) the court did not elicit sufficiently "strong evidence" of guilt by establishing a factual basis for the plea before accepting the plea pursuant to North Carolina v. Alford (1970), 400 U.S. 25.

In his response to the defendant's motion to withdraw his guilty plea, the County Attorney contended that the prosecution had complied with the plea agreement and requested the court to deny defendant's motion.

In considering defendant's motion to withdraw his plea, the District Court stated the following regarding the sexual offender evaluation:

> Defendant and his counsel certified to the Court that they had examined 46-18-101 et seq. and were aware of 46-18-111, MCA, and knew that the presentence investigation report is required to include a sex offender evaluation where the victim of a sex offense is under the age of 16. In this case, the victim was age 13 at the time of the offense, requiring the sex offender evaluation. . . . [I]n Custer County Criminal Cause No. 3313, this Court, as a condition of deferred imposition of sentence, previously required this same defendant to obtain a Sexual Offender Evaluation and follow through with all recommendations of said evaluation. Defendant failed to obtain the required sex offender evaluation and absconded from probation. Ultimately, Defendant's probation was revoked and Defendant served six months in the Custer County Jail. The defendant certainly should have

5

expected that this Court would definitely want him to undergo a sex offender evaluation after his second sex offense conviction. In light of the above, the Court finds Defendant's suggestion patently unbelievable that he was either surprised or unfairly prejudiced by the requirement of undergoing a sex offender evaluation.

With regard to defendant's claim that he "hope[d]" he would be allowed to withdraw his guilty plea if the Judge did not follow the County Attorney's recommendations, the court referred to its admonition to the defendant both at arraignment and at entry of plea, that the court would not be bound by a plea agreement. The court stated the claim was premature because defendant had not yet been sentenced.

In addressing defendant's argument that he entered his plea out of "fear" of what a jury might do, the District Court stated that the question is not whether the defendant acted out of fear or hope, but is whether defendant was influenced unduly and improperly either by hope or by fear in making a plea. The court concluded that there was nothing in the procedures used which would have given the defendant such false hope or fear or unduly or improperly influenced him.

Finally, after reviewing the evidence before the court, the court concluded that it had "no doubt that the defendant . . . had sexual intercourse with BY". The District Court denied defendant's motion to withdraw his guilty plea.

At the sentencing hearing, the probation officer who prepared the presentence investigation testified and recommended that the sentence be long enough for the defendant to complete the sex offender program at the prison. She testified it would take about

6

two years to complete the program. She further testified that she was "leery of the Plea Bargain".

The District Court sentenced defendant to a term of twenty years in the Montana State Prison with five years to be suspended. The court based its sentence on defendant's past criminal history, including a prior sex offense; the fact that the court believed defendant to be a sexual offender; the presentence investigation report; the psychosexual evaluation; defendant's threat to society; defendant's designation as a dangerous offender for parole purposes; and the need for monitoring the defendant following his release from prison due to his psychosexual problems. The court explained its reasons for not following the plea agreement.

> Following the Plea Bargain Agreement would have allowed the defendant to serve a relatively short prison term without confronting his sexual problems and without obtaining the treatment required to rehabilitate the defendant.

Following the sentencing, defendant filed a second motion to withdraw his plea of guilty stating only that the County Attorney did not oppose the motion. The District Court denied the motion stating:

> Before the court is Defendant's Motion to Withdraw Guilty Plea. Presumably, this Motion to Withdraw Guilty Plea is being proffered because the earlier Motion was filed before sentencing and the plea bargain provided that if the Court did not follow the recommendations of the County Attorney in the plea bargain, the County Attorney would not resist such a motion. Therefore, the Court assumes that the County Attorney does not resist the motion. In light of such non-resistance and the fact that a hearing has not been requested, the court deems the matter submitted. Based on the evidence in the record and for the reasons stated in its memorandum denying the earlier motion,
> Defendant's motion is hereby denied.

7

Defendant filed a third motion to withdraw the guilty plea on July 12, 1991, stating:

> The sentence was given in conformance with the recommendation at the Sentencing Hearing of Sheila Rebich, Adult Probation Officer. This recommendation was made in violation of her expressed representations to defense counsel. Defendant Kenneth Yother relied upon those representations when he entered his plea of guilty.
>     Defendant's reliance upon a probation officer's word and belief in her word should be considered legitimate. Defendant's reliance and belief in the veracity of Probation Officer Sheila Rebich gave rise to his hope that the Court would follow the Plea Agreement.

The County Attorney filed a memorandum in opposition to defendant's motion to withdraw his guilty plea. In the memorandum, the County Attorney stated:

> It should be noted that the Plea Agreement provided that the County Attorney would recommend imprisonment in the Montana State Prison for five (5) years with three (3) years of said sentence to have been determinate and served in its entirety, less credit for time spent in the Custer County Jail. The jail time to be served by the Defendant under the plea agreement, would be close to what the Defendant will be serving under the terms of the Court's Order of Commitment. The only real difference is an extended period of probation for the Defendant.

Defendant replied to the County Attorney's memorandum arguing that the State, by filing the memorandum, violated its agreement in regard to withdrawing the plea.

After a hearing, the District Court issued its order regarding defendant's third motion to withdraw his guilty plea stating:

> The Court has not considered any briefing and the County Attorney has not argued relative to this motion pursuant to the County Attorney's acknowledged promise not to resist withdrawal of the plea if the Court did not follow the County Attorney's recommendation.

> . . .

> The Court notes that the probation officer's

8

proposed acquiescence to the County Attorney's recommendation was expressly conditional on the Defendant being able to complete the intensive sex offender program at the Montana State Prison with that recommended sentence. After the probation officer consulted with officials at the Montana State Prison, she found out it was doubtful whether such a sentence would be workable. . . .

In fact, given the severity of the offense and defendant's dismal prognosis, the Court would have been hard-pressed to follow the probation officer's report had she acquiesced in the County Attorney's recommendation. Defendant's counsel is aware that the Court sometimes deviates from the recommendations of the probation officer. The fact that the Court usually goes along with the recommendations of the probation officer can no more give rise to an improper hope, than does the fact that the Court usually goes along with the recommendations of the County Attorney. The Defendant was thoroughly advised that the Court retained the ultimate decision and could sentence him up to the maximum provided by law. . . .

Defendant appeals from the District Court's order denying his motion to withdraw his plea of guilty.

I

Did the District Court abuse its discretion in denying defendant's motion to withdraw his plea of guilty?

Defendant contends that he relied on the representations of the probation officer that she would recommend that the District Court follow the sentencing recommendation contained in the plea bargain. He maintains that he entered his plea in reliance on such representations by the probation officer, and was therefore misled.

The State contends that the statement by the probation officer was not a part of the plea agreement. The State further points out that the probation officer's representation that she would follow the plea agreement was conditioned on the defendant being accepted

9

into the sexual offender program at the prison.

In State v. Milinovich (1991), 248 Mont. 373, 812 P.2d 338, Milinovich and the county attorney entered into a plea agreement which stated that the prosecutor would, at the time of sentencing, make no recommendation to the court relative to a term of years to be served. However, the presentence investigation prepared by the probation officer recommended that Milinovich be sentenced to 100 years in the Montana State Prison and be designated a dangerous offender for purposes of parole eligibility. Milinovich claimed that the probation officer's recommendation was equivalent to a recommendation by the prosecutor, and therefore violated the plea agreement.

This Court stated:

> The pre-sentence investigation prepared by the parole/probation officer is authorized by § 46-18-111, MCA, and its contents are spelled out in § 46-18-112, MCA. Section 46-18-112, MCA, states:

> "Whenever an investigation is required, the probation officer shall promptly inquire into the characteristics, circumstances, needs, and potentialities of the defendant; his criminal record and social history; the circumstances of the offense; the time the defendant has been in detention; and the harm to the victim, his immediate family, and the community . . . The investigation shall include a physical and mental examination of the defendant when it is desirable in the opinion of the court."

> A sentencing recommendation is merely a factor that may or may not be considered by the judge, . . . (Emphasis added.)

Milinovich, 812 P.2d at 340.

This Court held that the District Court had not abused its discretion in denying Milinovich's motion to withdraw his plea of

10

guilty. In doing so, this Court established that the probation officer's recommendation was not equivalent to a recommendation by the prosecutor.

In the present case, the County Attorney consistently followed the agreement in the making of his recommendations to the court. Following Milinovich, we conclude that the probation officer's recommendation in this case is not equivalent to a recommendation by the prosecutor. We conclude that the County Attorney did not breach the plea agreement with regard to sentencing. As stated by the District Court, the record demonstrates the defendant was well informed that the court would not be bound by the sentencing recommendations contained in the plea agreement.

We hold that the District Court did not abuse its discretion in denying defendant's motion to withdraw his plea of guilty.

II

Were defendant's constitutional rights to due process violated by the denial of his motion to withdraw his plea of guilty?

Defendant maintains that the County Attorney breached the plea agreement by opposing the motion to withdraw the plea after assuring defense counsel that he would not do so, and in so doing robbed the guilty plea of its voluntary character.

The defendant argues that the memorandum filed by the County Attorney violated the plea agreement. In that memorandum the County Attorney pointed out that the jail time to be served under the plea agreement would be close to the jail time to be served under the court's order of commitment and that the only real

11

difference was the extended period of probation under the order. That was not sufficient to constitute a violation of the plea agreement. We restate our conclusion that the County Attorney did not breach the plea agreement. With regard to the issue of constitutional rights, State v. Martz (1988), 233 Mont. 136, 144, 760 P.2d 65, 70, states:

> If the defendant makes a voluntary and intelligent plea, he knowingly waives [certain] constitutional rights, regardless of whether or not the judge accepts the recommendation of the State.

We conclude that the defendant made a voluntary and intelligent plea and knowingly waived all of his constitutional rights.

We hold that the defendant's constitutional rights to due process were not violated by the rejection of the plea bargain by the District Court.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

12

Justice Karla M. Gray, specially concurring.

I concur in the majority opinion. While I do not believe in advisory opinions on legal questions or, in general, the necessity or propriety of offering advice regarding the practice of law, I believe that comment on several particulars regarding this case may assist both counsel and the courts in avoiding problems in future cases.

The parties agree that part of the plea agreement in this case was a promise by the County Attorney not to object to withdrawal of the guilty plea in the event the court failed to follow the agreement. This promise was not contained in the written plea agreement, however. All promises and assurances which are part of a plea agreement should be contained in the written document in order to avoid disputes and difficulties over nondocumented parts of a plea agreement. In addition, it is my view that when the prosecution makes such a promise, it should abide by both the letter and the spirit of that promise. Under such circumstances, I believe it is the prosecution's duty to refrain from filing any brief or memorandum on the subject whatsoever. Here, the content of the prosecution's Memorandum in Opposition to Motion to Withdraw Guilty Plea did not constitute a substantive objection to the defendant's motion; nor did the court rely on it. The Memorandum, however, technically did violate the letter, and certainly violated the spirit, of the promise. The Memorandum does not appear to have affected the outcome; therefore, any error was harmless.

Finally, I believe it is important to note that the defendant

13

in this case entered an "Alford plea" to the charge of sexual intercourse without consent. As discussed in the dissenting opinion in State v. Cameron (Mont. 1992), ___ P.2d ___, 49 St.Rep. 150, Alford pleas in sex offense cases can result in a variety of unexpected consequences for defendants who, via the Alford plea, continue to assert their innocence. See also State v. Imlay (1991), 249 Mont. 82, 813 P.2d 979. Some of those consequences already have arisen in this case during the pre-sentence evaluation and investigation phases. Given that the sentence imposed on this defendant includes completion of the sex offender program at the Montana State Prison, and that the program cannot be completed so long as the defendant continues to deny the conduct, more Alford plea-related consequences may be ahead for this defendant.

_____
Justice

Justice Terry N. Trieweiler, joins in the foregoing special concurrence of Justice Karla M. Gray.

_____
Justice

14

May 1, 1992

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Marcey Felming Schwarz
Attorney at Law
P.O. Box 21386
Billings, MT 59104

HON. MARC RACICOT, Attorney General
Patricia Jordon, Assistant
Justice Bldg.
Helena, MT 59620

Gary E. Burke, Deputy County Attorney
Custer County
1010 Main
Miles City, MT 59301

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy