No. 97-323

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 136

294 Mont. 539

982 P.2d 1015

STATE OF MONTANA,

Plaintiff and Respondent,

v.

HAROLD JAMES SANDERS,

Defendant and Appellant.

APPEAL FROM: District Court of the Twelfth Judicial District,

In and for the County of Chouteau,

The Honorable John Warner, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Chad Wright, Appellate Defender Office, Helena, Montana

For Respondent:

Joseph P. Mazurek, Attorney General, Jennifer Anders, Assistant Attorney General, Helena, Montana; Allin H. Cheetham, Chouteau County Attorney, Fort Benton, Montana

Submitted on Briefs: September 3, 1998

Decided: June 14, 1999

Filed:

No

_____

Clerk


Justice William E. Hunt, Sr. delivered the Opinion of the Court.


**¶1. The Twelfth Judicial District Court, Chouteau County, denied Defendant Harold James Sanders' motion to withdraw his plea of guilty to the offense of threatening a public servant. The District Court subsequently sentenced Sanders to five years in prison, instead of imposing a three-year suspended sentence as recommended in the plea agreement. Sanders appeals. We reverse and remand for further proceedings consistent with this opinion.**

**¶2. The issue on appeal is whether the District Court abused its discretion by refusing to allow Sanders to withdraw his guilty plea.**

## FACTUAL AND PROCEDURAL BACKGROUND

**¶3. On January 21, 1997, the prosecution charged Sanders by information with one count of felony assault, in violation of § 45-5-202(2)(b), MCA, and one count of threatening a public servant, in violation of § 45-7-102(1)(a)(iii), MCA. The charges stemmed from an incident on January 8, 1997, where Sanders, while intoxicated, allegedly threatened a patron of Mike's Bar in Geraldine, Montana, with a knife. The Chouteau County Sheriff's Department located Sanders later that night, asleep on the floor of a friend's home. During his arrest, Sanders allegedly yelled obscenities at the arresting officers and kicked the safety screen from the back seat of the patrol car. He also told one officer that he would cut out his eyes, disembowel him, or later stalk him if he was not released immediately.**

**¶4. On February 11, 1997, Sanders entered into a plea agreement with the prosecution, pursuant to which Sanders agreed to plead guilty to threatening a public servant, and the prosecution agreed to dismiss the felony assault charge. The prosecution also agreed to recommend that the court impose a three-year suspended sentence, unless Sanders violated the law between the date of the agreement and**

sentencing. If he did, the prosecution could recommend any legal sentence. The agreement further provided that if either party failed to abide by the terms of the agreement, then the other party was released from performance.

¶5. The waiver of rights section of the agreement included a statement that Sanders was not under the influence of alcohol or drugs and that he did not suffer from any emotional disturbance or mental disease or defect that rendered him incompetent to enter a plea of guilty. It also included a section which stated that the defendant understood that at trial he might be found guilty of a lesser included offense. However, the section which was supposed to list the lesser included offenses for which Sanders could potentially be found guilty was marked "N/A," meaning "Not Applicable" to Sanders. The final plea agreement and waiver of rights was filed on February 18, 1997.

¶6. In connection with the plea agreement, the court held a change of plea hearing on February 18, 1997. The District Court inquired as to whether there was a lesser included offense for the crime of threatening a public servant, to which Sanders was pleading guilty. The prosecution responded that it was not aware of one. The court nevertheless asked Sanders if he understood that by pleading guilty he was giving up the right to convince a jury that he was guilty of a lesser charge, and Sanders responded that he did. The District Court did not ask Sanders if he was under the influence of drugs or alcohol.

¶7. A few weeks later, on March 14, 1997, Sanders filed a motion to withdraw his guilty plea, and the District Court entertained that motion at the sentencing hearing held on March 28, 1997. Sanders contended that his plea of guilty was not intelligently made, because he lacked full information. Specifically, he argued that there were, in fact, lesser included offenses to the charge of threatening a public servant, including disorderly conduct, resisting arrest, and obstructing a peace officer. However, both his attorney and the prosecution had advised him that there were none. He further noted that the waiver of rights section in the plea agreement also stated that waiver of lesser included offenses was not applicable. The District Court denied Sanders' motion.

¶8. Following the denial of Sanders' motion, the court continued with sentencing. The prosecution began by claiming that it was no longer bound by the terms of the parties' plea agreement, wherein it had agreed to recommend a three-year suspended

sentence. It cited the provision of the agreement which stated that if Sanders violated any law between the date of the agreement and the date of sentencing, it would be free to recommend any legal sentence. The prosecution represented to the court that Sanders had violated the law after he had signed the agreement. This was the first that Sanders had heard of the prosecution's position; prior to the hearing, the prosecution had informed neither Sanders nor his counsel that it believed Sanders had violated the law or that it intended to recommend a stiffer sentence than the three-year suspended sentence to which the parties had agreed.

¶9. The prosecution called Jerome J. Smith, a probation and parole officer, as its only witness. Smith testified that Sanders had been arrested on February 18, 1997. A background check had revealed an outstanding warrant for an offense, to which Sanders pled guilty on February 20, 1997. Smith thus recommended that the court impose a five-year sentence in the Montana State Prison.

¶10. Under cross-examination, however, Smith clarified that Sanders had pled guilty to an offense he committed in 1996, *prior* to his signing the plea agreement. Contrary to the prosecution's representations, Sanders had not committed any new offenses after he signed the agreement.

¶11. Sanders again moved the District Court to allow him to withdraw from the plea agreement. He contended that the prosecution had breached the agreement by recommending a five-year sentence and that he should thus be released from the agreement. Sanders himself was asked to make a statement to the court. Sanders told the court that when he was arrested he was under the influence of alcohol and was taking Prozac, and he does not recall the night's events. He again stated that he should be allowed to withdraw his plea of guilty.

¶12. After Sanders asked to be released from the plea agreement due to the prosecution's breach, the prosecution responded that to avoid any "potential loopholes," it was withdrawing its previous request that the court sentence Sanders to five years in the Montana State Prison. It admitted that it had misread the criminal information in the pre-sentence investigation, and that Sanders had not committed any crimes since signing the agreement. The prosecution stated:

So I guess I will go back to the terms of the plea agreement, which says the State will recommend defendant be sentenced to three years in the Montana State Prison with all that

time suspended.

**¶13. The District Court again refused to allow Sanders to withdraw from the plea agreement. However, the court then sentenced Sanders to a term of five years in the Montana State Prison, as recommended by Smith, instead of imposing the three-year suspended sentence recommended in the plea agreement.**

STANDARD OF REVIEW

**¶14. Prior to accepting a guilty plea, the trial court must satisfy the statutory requirements set forth at §§ 46-12-210 and 46-16-105, MCA. Because a defendant waives numerous constitutional rights when pleading guilty, "it is a well-settled legal principle that a guilty plea must be a voluntary, knowing, and intelligent choice among the alternative courses of action open to the defendant." State v. Bowley (1997), 282 Mont. 298, 304, 938 P.2d 592, 595 (citing State v. Radi (1991), 250 Mont. 155, 159, 818 P.2d 1203, 1206).**

**¶15. The trial court may permit the plea of guilty to be withdrawn, at any time before or after judgment, for good cause shown. Section 46-16-105(2), MCA. In determining whether to allow a defendant to withdraw a guilty plea, the court must consider each case in light of its own unique record. Bowley, 282 Mont. at 304, 938 P.2d at 595 (citing State v. Enoch (1994), 269 Mont. 8, 11, 887 P.2d 175, 177). However, "all doubt should be resolved in favor of a trial on the merits . . . ." State v. Schaff, 1998 MT 104, ¶ 16, 288 Mont. 421, ¶ 16, 958 P.2d 682, ¶ 16 (citing State v. McAllister (1934), 96 Mont. 348, 353, 30 P.2d 821, 823; State v. Enoch (1994), 269 Mont. 8, 18, 887 P.2d 175, 181). The court will permit a change of plea "if it fairly appears that the defendant was in ignorance of his rights and of the consequences of his act. . . ." Schaff, ¶ 17 (citing McAllister, 96 Mont. at 353, 30 P.2d at 823).**

**¶16. Our standard for reviewing a district court's denial of a motion to withdraw a guilty plea is whether the district court abused its discretion. Bowley, 282 Mont. at 304, 938 P.2d at 595. In determining whether a district court abused its discretion, we consider three factors:**

(1) the adequacy of the court's interrogation at the time the plea was entered regarding the defendant's understanding of the consequences of the plea;

(2) the promptness with which the defendant attempts to withdraw the plea; and

(3) the fact that the plea was the result of a plea bargain in which the guilty plea was given in exchange for dismissal of another charge.

Bowley, 282 Mont. at 304, 938 P.2d at 595.

## DISCUSSION

**¶17. Did the District Court abuse its discretion when it refused to allow Sanders to withdraw his guilty plea?**

*A. Adequacy of court's interrogation*

**¶18. As to the first factor, the adequacy of the court's interrogation regarding the defendant's understanding of the consequences of the plea, Sanders asserts two deficiencies. First, Sanders argues that the court failed to adequately inquire into whether Sanders was under the influence of drugs or alcohol at the time he entered his guilty plea. He maintains that the court could not rely on the waiver of rights form he signed, which included a statement that he was not under the influence of alcohol or drugs, because the court was required to ask about drug or alcohol use *at the hearing* in order to accurately determine competency. Sanders further states that had the court made the proper inquiry, it would have discovered that he was taking Prozac, which allegedly impairs judgment, thinking and motor skills. But the State points out that Sanders did not present this claim to the District Court as a basis for allowing him to withdraw his guilty plea. It contends that we should therefore decline to review Sanders' claim for the first time on appeal.**

¶19. We agree with the State. The record reveals that Sanders did not present this argument to the District Court when he filed his motion to withdraw his plea of guilty. It is well-settled that issues and claims of error not properly preserved in the trial court are barred from appellate review. Section 46-20-701, MCA. This Court does not address issues or theories raised for the first time on appeal. Schaff, ¶ 26. Sanders has not identified any exception to that rule that would apply here. Therefore, we decline to address this argument on the merits.

¶20. Sanders contends that the court's interrogation was deficient in a second respect. He argues that the court was not thorough enough in its inquiry to cure confusion created by the prosecutor and his own counsel as to whether there were any lesser included offenses of the charge to which he pled guilty. The failure of the court to identify any possible lesser included offenses unfairly forced him to understand the consequences of a complex legal issue in the abstract. Because he was not specifically informed that there were, in fact, lesser included offenses, his plea was not made intelligently. The State counters that the District Court's colloquy was adequate, because the court informed Sanders that to the extent there *were* lesser included offenses, by pleading guilty he waived the opportunity to convince a jury to convict on one of those lesser offenses.

¶21. We agree with Sanders. The fact that the court informed Sanders that there *may* be lesser included offenses was insufficient. As we pointed out, it is a fundamental principle that a guilty plea must be an "intelligent choice among the alternative courses of action open to the defendant." Bowley, 282 Mont. at 304, 938 P.2d at 595 (citation omitted). Additionally, this Court has stated that when a guilty plea is based upon a fundamental mistake or misunderstanding as to its consequences, the court may allow the defendant to withdraw the guilty plea. Benjamin v. McCormick (1990), 243 Mont. 252, 256, 792 P.2d 7, 10.

¶22. To make an intelligent choice as to whether to plead guilty, a defendant is entitled to know the precise nature of his alternatives. Knowing in the abstract that there may be potential lesser included offenses does not give a defendant the necessary information to intelligently weigh his options. Indeed, if a defendant was not made aware of the lesser included offenses, how could the defendant ever evaluate whether he thinks he could convince a jury that he was guilty of those offenses?

¶23. The problem was compounded in this case, because Sanders was incorrectly informed that there were *no* lesser included offenses. The waiver of rights section of the agreement stated that the lesser included offenses section was not applicable to him; his own counsel told him there were no lesser included offenses; and the prosecutor told the court that there were no lesser included offenses. The court did not contradict or correct any of this information. To make an intelligent choice and fully appreciate the consequences of his plea, Sanders was entitled to know whether, in fact, there were lesser included offenses, and if so, what those offenses were. Consequently, we conclude that this first factor, the adequacy of the court's interrogation regarding the defendant's understanding of the consequences of the plea, weighs in Sanders' favor.

B. *Promptness of motion*

¶24. Sanders filed his motion to withdraw his guilty plea on March 14, 1997, less than one month after he entered his guilty plea. He argues, and the State does not contest, that he filed the motion promptly. We agree. Accordingly, the second factor also weighs in Sanders' favor.

C. *Existence of plea bargain*

¶25. Lastly, we consider the third factor, whether the plea was the result of a plea bargain in which the guilty plea was given in exchange for dismissal of another charge. Although one charge was dismissed pursuant to the agreement, Sanders notes that the plea agreement also required the prosecution to recommend a three-year suspended sentence in exchange for his guilty plea. Sanders contends that the prosecution breached this agreement when it recommended a five-year prison sentence and then called the pre-sentence investigator as a witness in support of this recommendation. He argues that although the prosecution later agreed to recommend the three-year suspended sentence provided for in the plea agreement to avoid any "potential loopholes," the recommendation was only halfhearted and more importantly the damage had already been done.

¶26. The State responds that once the prosecution realized its mistake and that Sanders had not committed a crime since he had signed the agreement, the State withdrew his request for a five-year sentence and recommended the sentence provided for in the plea agreement. It argues that the prosecutor had made an honest

mistake in believing that the defendant had violated the terms of the agreement, and that this Court should not hold prosecutors to such an impossible standard. Additionally, the States cites State v. Yother (1992), 253 Mont. 128, 137, 831 P.2d 1347, 1352 and Bowley, 282 Mont. at 311-12, 938 P.2d at 600, and contends that this Court has stated that a probation officer is "free to recommend a sentence different than that agreed to by the State." Under this line of reasoning, the fact that the probation officer recommended a five-year prison sentence does not constitute a breach of the plea agreement.

¶27. This Court has repeatedly stated that fundamental fairness dictates that the prosecutors meticulously abide by the terms of a plea agreement. Specifically, this Court has instructed:

Prosecutors who engage in plea bargaining must meet strict and meticulous standards of both promise and performance as a plea of guilty resting in any significant degree on an unfulfilled plea bargain is involuntary and subject to vacation. Prosecutorial violations, even if made inadvertently or in good faith to obtain a just and mutually desired end, are unacceptable.

State v. Allen (1981), 197 Mont. 64, 69, 645 P.2d 380, 382 (citations omitted).

¶28. The State correctly notes that this Court has stated that "when a probation officer recommends a sentence different from that contained in a plea agreement, this does not constitute breach of the plea agreement by the prosecutor because the probation officer's recommendation is not equivalent to the prosecutor's recommendation." Bowley, 282 Mont. at 311-12, 938 P.2d at 600 (citing Yother, 253 Mont. at 137, 831 P.2d at 1352). The author of this opinion rejected this statement of law in Bowley and joined the specially concurring opinion, which concluded that:

when guilty pleas are induced by promises from one agent of the State to recommend a suspended sentence, and that recommendation is then rendered meaningless because another agent of the State makes a contrary recommendation, the State has not met "strict and meticulous standards of both promise and performance."

. . . .

What sense does it make to pay lip service to the principle that an accused person has a right to rely on material representations made to him or her as an inducement to enter into a plea agreement, but then allow the practical effect of that inducement to be circumvented by permitting another agent of the same government to do just the opposite of what was promised to the defendant? Is there any question whose recommendation the district judge will take more seriously?

Bowley, 282 Mont. at 313, 938 P.2d at 601 (Trieweiler, J., concurring).

**¶29. In any event, even applying the standard set forth in the majority opinion in Bowley, as we must, we conclude that the prosecution breached the plea agreement in this case, not because the probation officer recommended a different sentence, but because the prosecutor himself failed to meet "strict and meticulous standards of both promise and performance." Allen, 197 Mont. at 69, 645 P.2d at 382 (citations omitted). The prosecutor himself recommended the five-year sentence in violation of the plea agreement, and then called the pre-sentence investigator as a witness to support its view that Sanders' offense warranted a stiffer sentence than that provided for in the plea agreement.**

**¶30. Sanders contends that the prosecutor's retraction of the five-year sentence recommendation simply to avoid "potential loopholes" was only halfhearted. While, based on the cold record, this Court cannot evaluate the sincerity of the prosecutor's retraction or the enthusiasm with which he then recommended the three-year suspended sentence, this Court agrees with Sanders that the damage had already been done. The prosecutor had already represented to the court that it believed Sanders deserved a stiffer sentence, and it supported this recommendation with testimony from the pre-sentence investigator.**

**¶31. We reject the State's argument that such a holding will somehow impose new and impossibly high standards on prosecutors. This Court has always repeatedly stated that prosecutors "must meet strict and meticulous standards" when performing the duties required by plea agreements. Allen, 197 Mont. at 69, 645 P.2d at 382. Violations of the agreement, "even if made inadvertently or in good faith . . . are unacceptable." Allen, 197 Mont. at 69, 645 P.2d at 382 (citation omitted). The prosecutor in this case failed to meet the strict and meticulous standard. It was not "impossible" as the State suggests for the prosecutor to accurately assess whether**

Sanders had committed a crime after entering the plea agreement. The prosecutor had only to carefully read the information in the presentence investigation or question the investigator himself, as Sanders' attorney did on cross-examination. Additionally, he could have alerted Sanders' attorney to the fact that he intended to request a stiffer sentence *before* the sentencing hearing, rather than surprising him at the hearing, and thereby allow Sanders the opportunity to clarify the issue before the damage had been done. Although we have no doubt but that the prosecutor's failure was an honest mistake, we equally have no doubt but that his performance of the plea agreement was neither strict nor meticulous. Based on all the foregoing, we conclude that this third factor also weighs in favor of Sanders.

¶32. In sum, all three factors discussed above indicate that good cause existed to permit Sanders to withdraw his guilty plea. Accordingly, we hold that the District Court abused its discretion by denying Sanders' motion to withdraw his guilty plea.

¶33. We do not mean to suggest by this decision, however, that all three factors in every case must necessarily weigh in a defendant's favor before this Court will hold that the district court abused its discretion. We consider the errors that occurred in this case to be egregious, and any one of them alone may be sufficient in a similar case to justify allowing a defendant to withdraw his guilty plea.

¶34. Sanders requests that, on remand, the District Court should either allow him to withdraw his guilty plea or, alternatively, sentence him in accordance with the plea agreement. We agree. Due to both the inadequacy of the District Court's interrogation and the prosecutor's breach of the plea agreement, we remand this case to the District Court with the following instructions. Should Sanders desire to do so, the District Court should allow him to withdraw his guilty plea. Alternatively, if Sanders elects to be sentenced in accordance with the plea agreement, the District Court should do so.

¶35. Reversed and remanded for further proceedings consistent with this opinion.

/S/ WILLIAM E. HUNT, SR.

We Concur:

/S/ TERRY N. TRIEWEILER

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART

Justice James C. Nelson specially concurs and dissents.

**¶36. With two caveats, I concur in the Court's opinion as to its discussion concerning Sanders' withdrawal of his guilty plea. First, to the extent that reading ¶¶ 7 and 20-23 together might imply otherwise, I do not believe that our opinion can be read as determining that disorderly conduct, resisting arrest and obstructing justice are, in fact, lesser included offenses of threatening a public servant. That issue was not briefed, nor does my research reveal any case where we have actually so held. In my view, whether disorderly conduct, resisting arrest and obstructing justice, or any of these offenses, are actually lesser included offenses of threatening a public servant will have to be decided in some future case.**

**¶37. Second, at ¶ 28, the majority opinion quotes two paragraphs from the special concurrence in State v. Bowley (1997), 282 Mont. 298, 313, 938 P.2d 592, 601. As the author of <u>Bowley</u>, I continue to reject the position expressed in the cited paragraphs, and I continue to adhere to the rule set out in <u>Bowley</u> that**

when a probation officer recommends a sentence different from that contained in a plea agreement, this does not constitute breach of the plea agreement by the prosecutor because the probation officer's recommendation is not equivalent to the prosecutor's recommendation.

<u>Bowley</u>, 282 Mont. at 311, 938 P.2d at 600 (citing State v. Yother (1992), 253 Mont. 128, 137, 831 P.2d 1347, 1352).

¶38 I concur with Justice Gray's dissent regarding our remand for sentencing with alternative forms of relief.


/S/ JAMES C. NELSON




Justice Karla M. Gray, concurring in part and dissenting in part.




**¶38. I agree with the Court that the District Court abused its discretion in not allowing Sanders to withdraw his guilty plea, but join in Justice Nelson's special concurring opinion which relates to the actual rule of law in <u>Bowley</u>.**

**¶39. I write separately, however, to question the alternative relief granted to Sanders by the Court. Sanders attempted to withdraw his guilty plea, and we have held that the District Court erred in refusing to allow him to do so. Under that circumstance, the sole appropriate relief seemingly would be to remand to the District Court with instructions to allow Sanders to withdraw the plea and for further proceedings consistent therewith. Instead, the Court adds an alternative on remand via which Sanders is given the option of requiring the District Court to sentence him in accordance with the plea agreement. From a logic standpoint, this simply does not follow. Sanders is entitled to the relief he sought when he attempted to withdraw his guilty plea in the District Court--that is, the withdrawal of his plea. He is not entitled, though, to "have his cake and eat it, too" by being given control over whether to withdraw his plea or force sentencing in accordance with the plea agreement. Once we have determined that the District Court erred in refusing to allow withdrawal of the guilty plea, the substantive issue before us has been resolved, Sanders must be**

allowed to withdraw his plea, and there is no plea agreement left to be enforced.

¶40. In addition, the plea agreement in this case was not binding on the District Court in the first instance. The agreement merely provided that in exchange for Sanders' agreement to plead guilty to one charge, the State would dismiss another charge and make a certain sentencing recommendation. By providing the alternative option to Sanders on remand, we are giving Sanders more than he bargained for: he is allowed to force compliance with what was only to be a recommended sentence, not binding on the District Court, and still benefit from the State's dismissal of a felony assault charge.

¶41. The authority cited by Sanders for the alternative relief request--while not mentioned by the Court--is Bowley, and it is true that we granted such alternative relief in that case. See Bowley, 282 Mont. at 312, 938 P.2d at 600. We did not explain the basis for that grant of alternative relief, however, and I am concerned that we not establish a line of precedent here under which every ultimately successful request to withdraw a plea results in the defendant being able to force sentencing in accordance with a plea agreement never binding on the sentencing court in the first instance.

¶42. In Bowley, we "consolidated" unspecified issues into one issue on appeal, namely, whether the district court abused its discretion in not allowing the defendant to withdraw his guilty plea. Bowley, 282 Mont. at 301, 938 P.2d at 593. We then applied the usual factors pertaining to whether good cause existed for withdrawal of the plea, including whether the prosecution complied with the plea agreement in making its sentencing recommendation, concluded all the factors weighed in Bowley's favor, and held that the district court had abused its discretion. Bowley, 282 Mont. at 305-12, 938 P.2d at 596-600. We then noted what we characterized as Bowley's suggestion that, on remand, the district court should either allow him to withdraw his guilty plea or, alternatively, sentence him in accordance with the plea agreement. We followed that "suggestion" and instructed the district court accordingly, but without explaining why.

¶43. An examination of the briefs in Bowley reflects that the first issue raised by Bowley was whether the district court erred in refusing to allow him to withdraw his guilty plea. In the event we determined error had occurred in that regard, Bowley requested that he be allowed to withdraw his guilty plea. The second issue raised by Bowley was that, if we determined he was not entitled to withdraw his guilty plea, he

was entitled to be sentenced in accordance with the plea agreement as a result of the prosecution's breach of the plea agreement provision regarding the sentence to be recommended. In other words, Bowley did not actually suggest that he was entitled to both forms of relief; he argued first that he should be allowed to withdraw his plea and second, if he were not allowed to withdraw the plea, that he should be sentenced pursuant to the plea agreement based on the prosecution's breach. By consolidating the issues and mischaracterizing his "suggestion" for alternative relief, we apparently--and inadvertently--lost track of the distinction Bowley himself had made. At very least, we should clarify this portion of Bowley.

¶44. An argument can be made for the proposition that, when the prosecution breaches a plea agreement, the only fair result is to "punish" the prosecution for failing to meet the "strict and meticulous standards of both promise and performance" regarding plea agreements which we have determined must be met (see, e.g., Bowley, 282 Mont. at 311, 938 P.2d at 599 (citations omitted)) by requiring resentencing in accordance with the plea agreement, regardless of the fact that the agreement was not binding on the sentencing court at the outset. Perhaps such a proposition properly could be applied in cases where the only issue raised on appeal was that the prosecution breached the agreement and the only remedy sought was resentencing in accordance with the plea agreement, so that the defendant got what he or she bargained for (see State v. Owens (1992), 254 Mont. 224, 836 P.2d 595), as well as cases like Bowley and the present case which involve efforts to withdraw a plea based in part on the prosecution's breach of a plea agreement. In my view, however, the "punishment" proposition cannot properly be applied in an ordinary withdrawal of guilty plea case which does not involve a breach of the plea agreement by the prosecution.

¶45. The problem with the Court's decision to give Sanders control of the situation on remand is that the Court does not advance a rationale for its decision. Absent such a rationale, I cannot join in that portion of the decision because I do not know the basis on which the decision has been made. This case aside, however, my concern is that the Court is creating unnecessary confusion over when the "alternative options" will be applicable, and this confusion will come back to haunt both litigants and this Court.

¶46. For these reasons, while I agree that the District Court abused its discretion in refusing to allow Sanders to withdraw his plea, I join in Justice Nelson's restatement

**of the rule of law in <u>Bowley</u> and dissent from the alternative forms of relief the Court grants to Sanders.**

/S/ KARLA M. GRAY

Chief Justice J. A. Turnage and Justice James C. Nelson join in the foregoing.

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON