FILED

April 22 2009

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 08-0210

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2009 MT 142N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

ROBERT LEE CRAWFORD,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. DC-05-351
Honorable Dirk M. Sandefur, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Jim Wheelis, Chief Appellate Defender; Roberta R. Zenker,
Assistant Appellate Defender; Helena, Montana

      For Appellee:

            Hon. Steve Bullock, Montana Attorney General; Matthew T. Cochenour;
Helena, Montana

            Brant S. Light, Cascade County Attorney; Susan Weber, Deputy County
Attorney; Great Falls, Montana

                          Submitted on Briefs:  February 11, 2009

                                    Decided:  April 22, 2009

Filed:

                _____
                                Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of nonciteable cases published in the Pacific Reporter and Montana Reports.

¶2 Robert Lee Crawford ("Crawford") appeals from the judgment of the Eighth Judicial District Court, Cascade County, denying his motion to withdraw his guilty plea to criminal possession with intent to distribute. We affirm.

¶3 The issues on appeal are as follows:

¶4 1. Did the District Court err in denying Crawford's motion to withdraw his guilty plea?

¶5 2. Did the District Court hold an adequate hearing on Crawford's complaints against his first court-appointed counsel?

¶6 3. Did Crawford's first court-appointed counsel render ineffective assistance by failing to interview witnesses or by failing to question the initial search of Crawford's residence?

## FACTUAL AND PROCEDURAL BACKGROUND

¶7 On June 28, 2005, Great Falls police detectives assisted in a probation search of Crawford's residence. During the search, officers discovered a portable scale and a black nylon bag containing two tablets of morphine sulfate, plastic baggies, and nine individually packaged baggies of methamphetamine ("meth"), weighing a total of 18.25

2

grams. Officers also discovered three hypodermic needles, an empty pen tube of the type commonly used to snort or smoke meth that appeared to contain residue, and Crawford's wallet, which contained $741 in cash and papers with the names of known drug users and dealers.

¶8 Following the discovery of the drugs and paraphernalia, Crawford was informed of his rights and agreed to speak with the officers. Crawford then admitted that he was a meth dealer and that he owned the drugs and paraphernalia. Crawford claimed that he dealt drugs to gain the trust of other drug dealers whom he planned to eventually turn in to police. Crawford also admitted that he had not held a legitimate job for weeks and that he had no other source of income. At the time of the search, Crawford was on probation for distributing illegal drugs and evidently failed a urine analysis ("UA") test conducted by a probation officer, which precipitated the search of Crawford's residence. Crawford was charged with two counts of criminal possession with intent to distribute and one count of criminal possession of drug paraphernalia. The State also sought to designate Crawford as a persistent felony offender.

¶9 Crawford was arraigned and pleaded not guilty to the charges. The court appointed Larry LaFountain ("LaFountain") from the Cascade County Public Defender's office to represent Crawford. A few months after LaFountain's appointment, Crawford wrote an ex parte letter to the District Court complaining that he had only met twice with LaFountain and that he needed a "more aggressive" attorney. The District Court addressed Crawford's complaints against LaFountain at a status hearing on February 16, 2006. During the hearing, the court heard testimony from both LaFountain and Crawford

3

but determined that no action was necessary. LaFountain continued to represent Crawford following the hearing, and appeared with Crawford at another status hearing in March 2006. LaFountain subsequently withdrew as Crawford's attorney, and Melody Brown ("Brown") from the Cascade County Public Defender's office took over as Crawford's court-appointed counsel. Following her appointment, Brown requested additional time to review a report on Crawford's mental health, a report which LaFountain had ordered. Brown also ordered a second mental health examination and sought to reach a plea agreement with the State.

¶10 On January 17, 2007, Crawford entered into a plea agreement with the State in which he agreed to plead guilty to one count of criminal possession with intent to distribute. In exchange, the State agreed to drop the remaining two charges and to forego its intent to treat Crawford as a persistent felony offender. The State also agreed to recommend a sentence of twenty years with ten years suspended. Crawford acknowledged the rights he was waiving by pleading guilty in an acknowledgment and waiver of rights form, which included a wavier of the right to submit an instruction to the jury regarding a lesser included offense. At the change of plea hearing, Brown questioned Crawford about the rights he was waiving by pleading guilty, but she did not raise the possibility of lesser included offenses. The District Court accepted Crawford's plea and sentenced him to 20 years with 10 years suspended to the Montana State Prison.

¶11 Following his sentencing, Crawford filed a pro se motion to withdraw his guilty plea, and the District Court appointed new counsel to represent him and conduct a hearing. Crawford's primary argument in the District Court was that his interrogation at

4

the change of plea hearing was inadequate because he was not specifically advised that he might have been found guilty at trial of the lesser included offense of possession. During the hearing Crawford stated that he knew generally what a lesser included offense was but argued that he did not know it was an option in his case. The District Court denied the motion and concluded at the close of the hearing that Crawford "was fully aware of the direct consequences of his change of plea."

## STANDARD OF REVIEW

¶12　Whether a plea was entered voluntarily is a mixed question of law and fact, which we review de novo. *State v. McFarlane*, 2008 MT 18, ¶ 8, 341 Mont. 166, 176 P.3d 1057 (internal citations omitted). We review the district court's factual findings to determine if they are clearly erroneous. *McFarlane*, ¶ 8. We review a district court's interpretation of the law and its application of the law to the facts for correctness. *McFarlane*, ¶ 8. Ineffective assistance of counsel claims contain mixed questions of law and fact, which we review de novo. *Whitlow v. State*, 2008 MT 140, ¶ 9, 343 Mont. 90, 183 P.3d 861.

## DISCUSSION

¶13　**1. Did the District Court err in denying Crawford's motion to withdraw his guilty plea?**

¶14　Crawford argues that there was "good cause" for the withdrawal of his guilty plea for three reasons. First, Crawford argues that his guilty plea was involuntarily made because he was not specifically advised during the plea colloquy of the possibility of being convicted of the lesser included offense of possession. Second, Crawford contends that the District Court, not defense counsel, had the obligation to inform him of the

5

possibility of being convicted of a lesser included offense during the plea colloquy. Third, Crawford argues that his first court-appointed counsel, LaFountain, should have obtained the results of the UA test, and that his failure to do so constitutes "good cause" for withdrawal of the plea.

¶15 Section 46-16-105(2), MCA (2007), allows a trial court, "for good cause shown," to permit a guilty plea to be withdrawn at any time before the judgment is entered or within one year after the judgment becomes final. "Good cause" includes a plea that has been involuntarily made but may also be demonstrated by other criteria such as ineffective assistance of counsel. *State v. Warclub*, 2005 MT 149, ¶ 16, 327 Mont. 352, 114 P.3d 254; *Hans v. State*, 283 Mont. 379, 410-11, 942 P.2d 674, 693 (1997) (overruled on other grounds). This Court has adopted the standard for voluntariness set forth in *Brady v. United States*, 397 U.S. 742, 755, 90 S. Ct. 1463, 1472 (1970), which considers a guilty plea voluntary "only when the defendant is 'fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel . . . .'" *State v. Lone Elk*, 2005 MT 56, ¶ 21, 326 Mont. 214, 108 P.3d 500. To determine whether a plea was voluntarily made, we look at "case specific considerations" such as the "adequacy of the district court's interrogation, the benefits obtained from a plea bargain, the withdrawal's timeliness, and other considerations that may affect the credibility of the claims presented." *McFarlane*, ¶ 17.

¶16 In *State v. Sanders*, 1999 MT 136, 294 Mont. 539, 982 P.2d 1015 (overruled on other grounds) and *State v. Rave*, 2005 MT 78, 326 Mont. 398, 109 P.3d 753, we determined that "good cause" existed when there was doubt in the record about whether

6

the defendants had been adequately informed about possible lesser included offenses. In *Sanders*, we concluded that "[t]o make an intelligent choice as to whether to plead guilty, a defendant is entitled to know the precise nature of his alternatives." *Sanders*, ¶ 22. Because the defendant in *Sanders* was not specifically informed about the possibility of being convicted of a lesser included offense, compounded by the fact that the defendant had been given erroneous information, we determined that "good cause" existed for the withdrawal of the plea. *Sanders*, ¶ 23. We reached a similar conclusion in *Rave*, determining that the record left doubt about whether the defendant understood that the applicable lesser included offense was a misdemeanor rather than a felony. *Rave*, ¶ 18. However, in a recent decision we concluded that "good cause" did not exist even though the defendant had not been specifically advised about possible lesser included offenses when the defendant could not demonstrate that the factual circumstances warranted a lesser included offense instruction. In *State v. Swensen*, 2009 MT 42, ¶ 14, 349 Mont. 268, ___ P.3d ___, we affirmed the denial of a motion to withdraw a guilty plea when the defendant's on-the-record admissions about the injuries he inflicted on the victim effectively eliminated the possibility of the defendant obtaining a lesser included offense instruction. We noted that a criminal defendant is only "entitled to a lesser-included offense instruction if the jury, 'in light of the evidence presented, could be warranted in finding the defendant guilty of the lesser, rather than the greater, offense.'" *Swensen*, ¶ 14 (citing *State v. Martinez*, 1998 MT 265, ¶ 10, 291 Mont. 265, 968 P.2d 705).

¶17 Like *Swensen*, Crawford cannot demonstrate that he would be entitled to a lesser included instruction. Crawford admitted to officers during the search of his residence

that he was a meth dealer and that he owned the drugs and paraphernalia. Crawford also admitted that he had not held a legitimate job for weeks and that he had no other source of income. Although the facts of this case differ from *Swensen* in that Crawford's admissions were not made during formal testimony, we conclude that Crawford's admissions to the officers and the substantial evidence regarding the nature of the offense eliminated the possibility that Crawford would be entitled to an instruction on the lesser included offense of possession. It follows that, since a lesser included offense instruction would not have been warranted under the facts, any error in the court's failure to advise Crawford of such a possibility was harmless.

¶18 Finally, Crawford's argument that his plea was involuntarily made because LaFountain did not request the results of the UA test is not properly before us. While we have held that ineffective assistance of counsel can affect the voluntariness of a defendant's guilty plea, we will not consider the issue for the first time on appeal. *See McFarlane*, ¶ 12. Crawford did not raise ineffective assistance of counsel as a reason for the withdrawal of his guilty plea at the hearing on his motion to withdraw the plea and thus, the District Court did not have the opportunity to consider the issue. Therefore, we decline to address the merits of Crawford's contention that LaFountain's representation affected the voluntariness of his guilty plea.

¶19 **2. Did the District Court hold an adequate hearing on Crawford's complaints against his first court-appointed counsel?**

¶20 When a criminal defendant has made a pre-trial request for substitute counsel together with allegations of ineffective assistance of counsel, a district court is required to

8

conduct an adequate initial inquiry into the nature of the complaint to determine if it is "seemingly substantial." *State v. Gallagher*, 1998 MT 70, ¶¶ 14-15, 288 Mont. 180, 955 P.2d 1371. An initial inquiry may be adequate when the court "considered the defendant's factual complaints together with counsel's specific explanations addressing the complaints." *Gallagher*, ¶ 15.

¶21 In his ex parte letter to the District Court, Crawford complained that he had met only twice with LaFountain since his appointment, and that he needed "a more aggressive" attorney. Because of Crawford's complaints, the District Court held a hearing in which it questioned both Crawford and LaFountain. After Crawford agreed that LaFountain could continue with his representation, the District Court decided to take no action on Crawford's complaints. Crawford argues on appeal that the District Court's hearing was inadequate because the court failed to focus on the primary source of his dissatisfaction—the "lack of proper investigation into the suppression issues prevalent in his case." However, Crawford did not raise the issue of the UA results to the District Court as a basis of his dissatisfaction with LaFountain either in his ex parte letter to the court or at the hearing on the adequacy of LaFountain's representation. Because the District Court was not required to either anticipate or create Crawford's arguments against LaFountain, it did not err by failing to address this issue. Further, as the State notes, any deficiencies in the court's inquiry were harmless since Crawford ultimately obtained new counsel who negotiated Crawford's plea agreement and questioned Crawford at the change of plea hearing.

**¶22 3. Did Crawford's counsel render ineffective assistance by failing to interview witnesses or by failing to question the initial search of Crawford's residence?**

¶23 The Sixth Amendment of the United States Constitution and Article II § 24 of the Montana Constitution guarantee a defendant's right to counsel in a criminal proceeding. Ineffective assistance of counsel claims are analyzed under the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 2064 (1984), which requires the defendant to show (1) that counsel's performance was deficient, and (2) that counsel's deficient performance prejudiced the defense. The defendant must satisfy each prong of the *Strickland* test in order to demonstrate ineffective assistance of counsel, but there is no need to conduct the analysis in any particular order; if either prong cannot be satisfied, the other need not be addressed. *Whitlow*, ¶¶ 10-11.

¶24 Crawford claims that LaFountain rendered ineffective assistance by failing to question the search of his residence and by failing to interview witnesses. He claims that LaFountain's "failure to question the search clearly establishe[d] that his performance fell below an objectively reasonable standard . . . ." However, we are not required to address Crawford's claim with respect the first prong since we conclude that Crawford cannot establish that LaFountain's performance prejudiced his case. To establish the second *Strickland* prong, Crawford must show that LaFountain's performance prejudiced his case "to the extent that a reasonable probability exists that the result of the proceeding would have been different had counsel not performed ineffectively." *Weaver v. State*, 2005 MT 158, ¶ 15, 327 Mont. 441, 114 P.3d 1039. LaFountain represented Crawford for the first eight months of the proceedings before Brown took over as Crawford's

10

counsel. Brown represented Crawford for approximately ten months until Crawford pleaded guilty. During Brown's representation, as noted by the State, Crawford's mental health evaluations were completed, the UA test results were requested, and Crawford obtained an extremely beneficial plea bargain in which the State agreed to drop the second felony count and to forego its pursuit of a persistent felony offender designation. Since Brown either completed or undertook the actions Crawford now complains of, he cannot demonstrate that his case would have been different had LaFountain taken those actions. Thus, we conclude that LaFountain did not render ineffective assistance.

¶25 Affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ JIM RICE
/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ BRIAN MORRIS