No. 97-094

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 104


STATE OF MONTANA,

Plaintiff and Respondent,

v.

RICHARD D. SCHAFF,

Defendant and Appellant.



APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable G. Todd Baugh, Judge presiding.



COUNSEL OF RECORD:

For Appellant:

William F. Hooks, Appellate Defender Office, Helena,
Montana

For Respondent:

Joseph P. Mazurek, Attorney General, Jennifer Anders,
Assistant Attorney General, Helena, Montana; Dennis Paxinos,
Yellowstone County Attorney,Billings, Montana



Submitted on Briefs: December 4, 1997

Decided:   May 4, 1998
Filed:


_____

Justice William E. Hunt, Sr., delivered the Opinion of the Court.

¶1 Richard D. Schaff (Appellant) was charged with one count of attempted deliberate homicide, one count of aggravated kidnaping, two counts of sexual intercourse without consent, one count of sexual assault, and one count of witness tampering. Pursuant to a plea agreement, Appellant pled guilty to attempted deliberate homicide and witness tampering in exchange for the State's dismissal of the remaining charges. Prior to sentencing, Appellant moved to withdraw his guilty pleas. The Thirteenth Judicial District Court, Yellowstone County, denied Appellant's motion. The District Court thereafter sentenced Appellant according to the terms of the plea agreement. Appellant now appeals the District Court's denial of his motion to withdraw his guilty pleas. We affirm.

¶2 The sole issue presented for our review is whether the District Court erred in denying Appellant's motion to withdraw his guilty pleas.

BACKGROUND

¶3 On September 28, 1995, Appellant met V.F., a 14-year old girl, in downtown Billings and offered to drive her to the west end of town. V.F. accepted Appellant's offer. Instead of taking V.F. to the west end, Appellant drove out to the country and began making sexual advances toward her. Appellant fondled V.F.'s breasts, inserted his finger in her vagina, and forced her to perform oral sex. When V.F. refused to continue with oral sex, Appellant hit V.F., dragged her out of the truck, and stabbed her several times with a small knife. V.F. dropped to the ground and played dead. Appellant then dragged V.F. off the road to a grassy field and left her. Appellant wiped off his knife, washed his hands in a nearby stream, and drove away. V.F. managed to make it to a nearby house where she called the police. V.F. described her attacker and his truck to the authorities, who then disseminated the information to the local media. An anonymous tip led authorities to Appellant and he was later apprehended.

¶4 On October 19, 1995, Appellant was charged by information with one count of attempted deliberate homicide, one count of aggravated kidnaping, and two counts of sexual intercourse without consent. The information was amended on January 8, 1996, to include one count of sexual assault, and amended again on July 19, 1996, to include one count of witness tampering.

¶5 On September 12, 1996, Appellant and the State of Montana (State) entered into a written plea agreement. Appellant agreed to plead guilty to attempted deliberate homicide and witness tampering in exchange for the State's dismissal of the remaining charges. The State also agreed that it would bring no further charges against Appellant for any actions concerning V.F. or her family for any of the transactions then known to the State. Further, the State agreed to recommend that Appellant be sentenced to a prison term of 40 years, plus an additional consecutive term of 10 years for use of a weapon. The plea agreement provided that if the court did not accept the State's recommendations for sentencing, Appellant could withdraw his guilty pleas.

¶6    A change of plea hearing was held on September 12, 1996. The District Court asked Appellant whether he had read the plea agreement and discussed it with his attorney to which Appellant replied that he had. The court informed Appellant that he was not required to plead guilty and that he was entitled to a jury trial. The court also informed Appellant of the State's burden to prove his guilt beyond a reasonable doubt, and reviewed with Appellant his right to remain silent, his right to present witnesses on his behalf, and his right to confront witnesses against him. Finally, the court asked Appellant whether he was satisfied with the services of his attorney and Appellant replied that he was.

¶7    The court then questioned Appellant about the offenses to establish a factual basis for his guilty pleas. However, before Appellant answered, his attorney spoke up and informed the court that Appellant had been advised to keep his factual statements to a minimum so that, in the event Appellant later withdrew his guilty pleas, his basic right to remain silent would be preserved. Appellant's attorney also explained to the court the nature of Appellant's guilty pleas:

> [Appellant's] plea is, in fact, a compromise of what we perceive to be validly a contested case. We have done extensive investigation and research on this matter, and we do believe that while there is a substantial risk of conviction of the offenses to which he is pleading guilty, and perhaps a substantial risk of conviction on the other offenses as well, that he also had the opportunity to present lesser-included offense instructions and arguments to the jury, which could very well have proved persuasive. But in light of the overwhelming upside risk in this case, which would be somewhere around 520 years if all counts were proven and the court imposed maximum consecutive sentences, I have advised him frankly that this is a wise decision on his behalf. And with that proviso, Your Honor, Mr. Schaff is prepared to address your question.

The District Court and Appellant thereafter engaged in the following exchange:

> THE COURT: Mr. Schaff, I understand the predicament that the court's question poses to you; nonetheless, we do have to have a brief admission on the record as to what you have done in order that the court might be able to accept your plea of guilty, so--
> MR. SCHAFF: Well --
> THE COURT:  -- have at it.
> MR. SCHAFF: I cut the victim and left her on the road.
> THE COURT: Okay. Now, can you tell me -- when you say you cut the victim, can you give me any more detail than that?
> MR. SCHAFF: Cut her with a pocket knife.
> THE COURT: Okay. Now, do you -- if my recollection is correct, the affidavit in support of this references stabbing, I believe as opposed to cutting. Do you draw a distinction between the two or are you trying to make a distinction?

MR. SCHAFF: Not really.

THE COURT: Okay. I mean, would the court be correct in assuming then that you are admitting that you did stab her on a number of occasions?

MR. SCHAFF: Yes.

THE COURT: Was it your intent to do that?

MR. SCHAFF: No.

THE COURT: I don't mean intent to commit deliberate homicide, was it your intent to stab her? Was it some sort of accident?

MR. SCHAFF: No, it wasn't an accident.

The State then interjected with the following offer of proof:

ATTORNEY FOR STATE: As to Count I, the State -- for the attempt of deliberate homicide, the State had intended to introduce in excess of 100 exhibits as to this count, including hairs and articles of clothing. Specifically, the State would have introduced the hairs examined by the state crime lab, an expert would testify that microscopically those were of the victim, who is a minor.

And that that hair was cut hair, not pulled out by the roots, and not fallen hair, but hair that had been cut from a sharp instrument. That hair was found in defendant's vehicle. In addition, the minor victim's article of clothing, specifically a flannel shirt, was examined by the state crime lab and it would have had eight slits caused by a sharp instrument within that article of clothing and would examine -- those would have been around the shoulder and neck area.

In addition, the emergency room physician, Dr. Theade of St. Vincent, treated the minor child and would have testified that she suffered from wounds committed by those consistent with a sharp instrument like a knife. She would also testify that those wounds were superficial and not life threatening.

However, if we went to trial the minor victim would have testified, and that would have been an issue of fact for that jury. Her testimony would have been that she played opossum after the attack took place, and she played dead. And the defendant eventually left her alone in the [sic] an isolated area southwest of Montana, but in Yellowstone County.

¶8 The court further questioned Appellant concerning the factual basis of the charge of witness tampering. The court then explained the maximum penalties for the offenses under the sentencing guidelines and informed Appellant of his right to withdraw his guilty pleas if the court ultimately refused the State's recommendations for sentencing. Upon Appellant's indication that he was sober, that no threats had been made to him, and that it was his desire to plead guilty, the court accepted Appellant's guilty pleas and set the date for sentencing.

¶9    On November 12, 1996, before his sentencing, Appellant filed a motion to withdraw his guilty pleas.  At the hearing on the motion, Appellant testified that he was not dissatisfied with his attorney, but that he simply made a wrong decision.  Appellant testified that his attorney advised him of the possibility of a 520-year prison term if found guilty of the six felonies, but that a more likely prison term would be 110 years.  Appellant testified that prior to entering the plea agreement, he had reviewed V.F.'s statement and the other evidence and was informed of the strengths and weaknesses of the State's case.  Appellant testified that although he believed V.F. was lying, he went ahead and signed the plea agreement out of fear that the jury would find him guilty and that the court would impose a lengthy sentence.

¶10   Appellant further testified that the plea offer was made available for only one day and that he felt pressured to accept it.  However, Appellant also testified that he and his attorney discussed plea negotiations a few days prior to the State's formal plea offer, and that during these preliminary negotiations, the State indicated the possibility of a 50-year sentence.  Appellant testified his attorney told him the decision was his to make.  Finally, Appellant informed the court that the State had not yet fulfilled its obligation of dismissing the four remaining charges.

¶11   In his brief in support of the motion to withdraw the guilty pleas, Appellant emphasized that he never admitted an intent to kill V.F. and argued that there was no factual basis for his guilty plea to attempted deliberate homicide.  Appellant further argued that because the State had not yet dismissed the remaining four charges, he had not received the benefit of the bargain and no prejudice to the State existed by permitting him to withdraw his guilty pleas.

¶12   On December 13, 1996, the court denied Appellant's motion.  In its memorandum and order, the court found that Appellant "had plenty of time to consider the State's offer" and concluded that Appellant's plea was not involuntary simply because he was afraid he would receive a much longer sentence if he went to trial.  The court applied the three-part test announced in State v. Huttinger (1979), 182 Mont. 50, 54, 595 P.2d 363, 366, to determine whether Appellant should be allowed to withdraw his plea.  The court found that Appellant "entered his guilty plea voluntarily and with a full understanding and waiver of his rights."

¶13   On December 19, 1996, the court sentenced Appellant according to the terms of the plea agreement.  Appellant filed his notice of appeal on January 10, 1997.

                    STANDARD OF REVIEW

¶14   "[I]t is a well-settled legal principle that a guilty plea must be a voluntary, knowing, and intelligent choice among the alternative courses of action open to the defendant."  State v. Bowley (1997), 54 St.Rep. 353, 355,    Mont.    , 938 P.2d 592, 595 (quoting State v. Radi (1991), 250 Mont. 155, 159, 818 P.2d 1203, 1206).  To ensure voluntariness of a guilty plea, Montana law requires that before accepting the plea the district court must engage in a detailed inquiry of the defendant to ensure his understanding of the charge and

the consequences of the plea.  See generally Sections 46-12-204, 46-12-210, 46-12-212, and 46-16-105(1), MCA.

¶15  A district court may permit a defendant to withdraw his guilty plea at any time, before or after judgment, for good cause shown.   Section 46-16-105(2), MCA.
In Montana, there exists no statute or rule of procedure for district courts to apply when determining whether a defendant has shown good cause.  Instead, each case is considered in light of its unique facts and is subject to the sound discretion of the district court.  Bowley, 54 St.Rep. at 355, 938 P.2d at 595.

¶16  Although the determination of good cause is discretionary, this Court has set forth some general principles to guide district courts in their analyses. One general principle is that "all doubts should be resolved in favor of a trial on the merits . . . and the discretion of the court should be liberally exercised in favor of life and liberty."  State v. McAllister (1934), 96 Mont. 348, 353, 30 P.2d 821, 823.  See also State v. Enoch (1994), 269 Mont. 8, 18, 887 P.2d 175, 181; Huttinger, 182 Mont. at 55, 595 P.2d at 367.  Another principle states:

> A change of plea will be permitted only if it fairly appears the
> defendant was ignorant of his rights and the consequences of his
> act, or he was unduly and improperly influenced either by hope
> or by fear in making the plea, or if it appears the plea was
> entered under some mistake or misapprehension.

State v. Cameron (1992), 253 Mont. 95, 101, 830 P.2d 1284, 1288 (emphasis supplied).

¶17  Appellant argues that the second principle is unduly restrictive and conflicts with the first principle.  Appellant also asserts that the second principle is a misstatement of the law.  Appellant traced the above quotation from Cameron to State v. Miller (1991), 248 Mont. 194, 197, 810 P.2d 308, 310 to Benjamin v. McCormick (1990), 243 Mont. 252, 256, 792 P.2d 7, 10 to State v. Mesler (1984), 210 Mont. 92, 96, 682 P.2d 714, 716 to McAllister. Appellant discovered that Mesler misquoted McAllister.  In McAllister, we stated:

> A change of plea will ordinarily be permitted if it fairly appears
> that the defendant was in ignorance of his rights and of the
> consequences of his act, or if influenced unduly and improperly
> either by hope or fear in making it, or if it appears that the plea
> was entered under some mistake or misapprehension.

McAllister, 96 Mont. at 353, 30 P.2d at 823 (emphasis supplied).  Our research reveals that this same mistake appears in State v. Haynie (1980), 186 Mont. 374, 380, 607 P.2d 1128, 1131.  We believe the substitution of the word only for ordinarily significantly changed the application of the second principle from liberal to restrictive.  Because the fundamental purpose of allowing the withdrawal of a guilty plea is to guard against the conviction of an innocent person, Bowley, 54 St.Rep. at 355, 938 P.2d at 595, we believe the liberal application is the better one.  Therefore, we undertake to correct the

mistake.  In the future, the two principles discussed above can be combined and succinctly stated as follows:

> A change of plea will ordinarily be permitted if it fairly appears that the defendant was in ignorance of his rights and of the consequences of his act, or if influenced unduly and improperly either by hope or fear in making it, or if it appears that the plea was entered under some mistake or misapprehension.  If there is any doubt that a plea is involuntary, the doubt should be resolved in the defendant's favor.

McAllister, 96 Mont. at 353, 30 P.2d at 823.

¶18  We review a district court's denial of a motion to withdraw a guilty plea for abuse of discretion.  Bowley, 54 St.Rep. at 355, 938 P.2d at 595.  To determine whether a district court abused its discretion in denying a defendant's motion to withdraw a guilty plea, we consider three factors:

(1)    the adequacy of the court's interrogation at the time the plea was entered regarding the defendant's understanding of the consequences of the plea;

(2)    the promptness with which the defendant attempts to withdraw the plea; and

(3)    the fact that the plea was the result of a plea bargain in which the guilty plea was given in exchange for dismissal of another charge.

Bowley, 54 St.Rep. at 355, 938 P.2d at 595; Huttinger, 182 Mont. at 54, 595 P.2d at 366.

## DISCUSSION

¶19  Did the District Court err in denying Appellant's motion to withdraw his guilty pleas?

### A.  Adequacy of the court's interrogation

¶20  A judge's interrogation of a defendant seeking to enter a guilty plea is sufficient if the judge:

> ". . . examines the defendant, finds him to be competent, and determines from him that his plea is voluntary, he understands the charge and the possible punishment, he is not acting under the influence of drugs or alcohol, he admits his counsel is competent and he has been well advised, and he declares in open court the fact upon which his guilt is based."

State v. Mahoney (1994), 264 Mont. 89, 94-95, 870 P.2d 65, 69 (citations omitted).  Appellant only disputes that portion of interrogation requiring the court to establish a factual basis for his guilty plea to attempted deliberate homicide.

¶21  Appellant argues that the court failed to establish a factual basis for the guilty plea because he refused to admit that he intended to kill the victim, an essential element of the crime with which he was charged.  Appellant points

to the colloquy with the court where he admitted stabbing V.F. several times with a small knife but denied intending to kill her.

¶22  The State counters that a court need not extract an admission from the defendant of every element of the crime in order to establish a factual basis for the guilty plea.  We agree with the State. Section 46-12-212, MCA, provides:

> Determining accuracy of plea.  (1) The court may not accept a guilty plea without determining that there is a factual basis for the plea in charges of felonies or misdemeanors resulting in incarceration.  (2) A defendant who is unwilling to admit to any element of the offense that would provide for a factual basis for a plea of guilty may, with the consent of the court, enter a plea of guilty to the offense if the defendant considers the plea to be in the defendant's best interest and a factual basis exists for the plea.

Section 46-12-212, MCA, does not require a defendant to establish every element of the offense charged in order for his guilty plea to be accepted.  The statute does not preclude the State from offering proof that a factual basis exists for a defendant's guilty plea.  Rather, the statute simply requires that a factual basis for the defendant's plea be established.  We hold that the absence of an admission from Appellant concerning the mental state element of attempted deliberate homicide did not, of itself, render the court's interrogation inadequate and his plea involuntary.

¶23  Appellant next attacks the quality of the evidence on which the court relied to establish a factual basis for the mental state element of the offense.  Appellant argues that at best the State's offer of proof demonstrates only that V.F. suffered superficial knife wounds, not that he intended to kill V.F.  Appellant's argument is not persuasive.

¶24  In State v. Sellner (1997), 54 St.Rep. 1464,    Mont.   , 951 P.2d 996, we stated:

> Attempted deliberate homicide requires proof that Appellant had the purpose to cause the death of another human being and acted toward purposely or knowingly causing the death of another human being.  Sections 45-4-103 and 45-5-102, MCA.  "Purposely" means it was the defendant's conscious object to engage in that conduct or cause that result.  Section 45-2-101(63), MCA.  A person acts knowingly with respect to a given result when the person is aware of a high probability that the result will be caused by the person's conduct.  Section 45-2-101(34), MCA.

Sellner, 54 St.Rep. at 1465, 951 P.2d at 998.  Where "purposely or knowingly" causing a result is an element of an offense, that element can be established if the result involves the same kind of harm or injury as contemplated by the defendant, although the actual degree of injury is greater than intended.  Section 45-2-201(2)(b); State v. Rothacher (1995), 272 Mont. 303, 307, 901 P.2d 82, 85.  In Montana, circumstantial evidence is an "acceptable and often convincing method of proving criminal intent."  State v. Brogan (1993), 261 Mont. 79, 89, 862 P.2d 19, 25-26 (citations omitted).  "The existence of a

mental state may be inferred from the acts of the accused and the facts and circumstances connected with the offense."  Section 45-2-103(3), MCA.

¶25  Appellant has presented no facts from which a credible argument could be made that when he stabbed V.F. eight times, he was not aware of a high probability that his actions would result in serious bodily injury to or the death of V.F.  Appellant admitted stabbing V.F. several times and admitted that these acts were voluntary and not accidental.  At the very least, Appellant's admissions, coupled with over 100 exhibits and other circumstantial evidence to which the State referred in its offer of proof, provide a sufficient factual basis from which to believe that Appellant intended to inflict serious bodily injury to V.F.  In fact, we do not view it a stretch to infer from the facts and circumstances of the offense that Appellant intended to kill V.F.  The record shows that V.F. played dead and that Appellant dragged her to a nearby field and left her for dead.  We hold that sufficient evidence was presented during the court's interrogation of Appellant from which the court could establish a factual basis for the mental state element of attempted deliberate homicide. Thus, the first factor weighs heavily in favor of the court's denial of Appellant's motion to withdraw his guilty plea.

¶26  The State notes that although not labeled as such, Appellant's plea was, in effect, an Alford plea, referring to North Carolina v. Alford (1970), 400 U.S. 25, 91 S. Ct. 160, 27 L.Ed.2d 162.  In Alford, the United States Supreme Court held that when a defendant clearly expresses his desire to plead guilty despite his belief in his innocence, and the state demonstrates a "strong factual basis for the plea," there is no constitutional error in accepting the defendant's plea. Alford, 400 U.S. at 38.  Appellant correctly points out that this argument was not made to the District Court.  We will not address issues or theories raised for the first time on appeal.  See Sections 46-20-104(2) and -701(2), MCA; State v. Woods (1997), 283 Mont. 359, 372, 942 P.2d 88, 96-97.  Therefore, we decline to address this argument on the merits.

                    B.   Promptness of motion

¶27  The District Court did not address factor two, the promptness of Appellant's motion to withdraw his guilty plea.  The record indicates that Appellant's motion to withdraw his guilty plea was made before sentencing and within two months of the court's acceptance of the guilty plea.  Both Appellant and the State agree that Appellant's motion was timely. Accordingly, the second factor weighs in Appellant's favor.

                    C.   Existence of a plea bargain

¶28  The third factor we must consider is the fact that Appellant's guilty plea was the result of a  plea bargain.  Consideration of this factor is intended to prevent the parties to a plea agreement, either a defendant or the State, from escaping the obligations of the plea agreement after accepting its benefits. State v. Milinovich (1994), 269 Mont. 68, 74, 887 P.2d 214, 217; Bowley, 54 St.Rep. at 358, 938 P.2d at 599 (citing State v. Allen (1981), 197 Mont. 64, 68-69, 645 P.2d 380, 382).

¶29  Appellant's plea agreement provided that in exchange for Appellant's pleas of guilty to attempted deliberate homicide and witness tampering, the

State would dismiss with prejudice the remaining four charges at Appellant's sentencing and would bring no further charges against Appellant for any actions concerning V.F. or her family for any of the transactions then known to the State. Appellant pled guilty to the two charges. However, at the time Appellant made his motion, the remaining four charges had not been dismissed because Appellant had not yet been sentenced. Appellant argues that because dismissal had not yet occurred, he had not received the benefits of his plea agreement. Thus, Appellant reasons, having fulfilled his part of the bargain, and having not realized the benefit of the bargain, he would not have escaped his obligations of the plea agreement after accepting its benefits, and no prejudice would have resulted to the State had he been allowed to withdraw his guilty pleas.

¶30 The State contends that Appellant received the benefit of the bargain when he pled guilty and insulated himself from further state action on the remaining and future related charges. The State further contends that just because the dismissal of the remaining charges had not yet occurred does not mean that Appellant had not received the benefit of his bargain. Finally, the State argues that "absent some legitimate infirmity in the plea process itself, a criminal defendant cannot simply change his mind and back out of an otherwise voluntary plea agreement." We agree with the State.

¶31 The plea agreement here certainly conferred some benefits upon Appellant: Appellant avoided the consequences of six felony convictions, and the State refrained from bringing further charges against Appellant. We note that the third factor is resolved in the defendant's favor when the State has in fact breached the plea agreement. See Bowley, 54 St.Rep. at 358-59, 938 P.2d at 599. In this case, the State never breached the plea agreement. Nothing in the record suggests that at the time Appellant made his motion, the State would renege on the remainder of its obligation and refuse to dismiss the remaining four charges at sentencing. We note that after denial of Appellant's motion, the State in fact fulfilled its obligations and Appellant was sentenced according to the plea agreement. Upon these facts, we resolve the third factor in favor of the court's denial of Appellant's motion to withdraw his guilty plea.

¶32 In sum, the three factors discussed above illustrate that no good cause existed for the court to allow Appellant to withdraw his guilty pleas. Although the promptness factor weighs in Appellant's favor, the other two factors do not. The District Court's interrogation was adequate in establishing a factual basis for the guilty plea, and the Appellant's guilty plea was the result of a valid and enforceable plea agreement with the State. The fact that the State had not yet dismissed the four remaining charges when Appellant made his motion to withdraw guilty pleas did not constitute a breach of the plea agreement on the part of the State. Nothing in the record suggests Appellant would not have received the full benefit of the plea bargain at sentencing.

¶33 Similarly, nothing in the record establishes that Appellant's plea was based on a fundamental mistake, misapprehension, or misunderstanding to its consequences. Indeed, the record shows that Appellant weighed the evidence for and against him, considered the likelihood of convictions on all counts, and made a voluntary and intelligent decision to enter a plea agreement in order to

avoid a lengthy sentence. "[A] plea agreement presupposes fundamental fairness in the process of securing such an agreement between the defendant and the prosecutor . . . ." Bowley, 54 St.Rep. at 358, 938 P.2d at 599. Fundamental fairness requires that Appellant not be allowed to withdraw his guilty plea.

¶34 We hold that the District Court did not abuse its discretion in denying Appellant's motion to withdraw his guilty pleas.

¶35 Affirmed.

/S/ WILLIAM E. HUNT, SR.

We Concur:

/S/ J. A. TURNAGE
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON
/S/ JIM REGNIER