No. 99-119

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 7N

STATE OF MONTANA,

Plaintiff and Respondent,

v.

EVERETT C. NELSON,

Defendant and Appellant.

APPEAL FROM: District Court of the Eighteenth Judicial District,

In and for the County of Gallatin,

The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Anne H. Watson, Herman A. Watson, III; Watson Law Office, Bozeman, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Chris D. Tweeten,

Chief Counsel; Helena, Montana

Marty Lambert, Gallatin County Attorney; Todd Whipple, Deputy

Gallatin County Attorney, Bozeman, Montana

---

Submitted on Briefs: September 30, 1999

Decided: January 11, 2000

Filed:

_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

1. ¶Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

2. ¶Everett Nelson (Nelson) appeals from the order of the Eighteenth Judicial District Court, Gallatin County, denying his motion to withdraw the guilty plea he entered in Gallatin County Justice Court (Justice Court). We affirm.

3. ¶The sole issue on appeal is whether the District Court abused its discretion in denying Nelson's motion to withdraw his guilty plea.

## BACKGROUND

1. ¶On July 17, 1997, Nelson was arrested and charged in the Justice Court with partner or family member assault under § 45-5-206(c), MCA. He was taken to the Gallatin County Detention Center (Detention Center) for processing, where he inquired about posting bond to be released and was told that he could not post bond on this type of charge. He called his mother and subsequently was unable to call his attorney because the detainees' phone was "dead."

2. ¶After being incarcerated overnight, Nelson was arraigned in Justice Court and, together with other detainees, generally advised of his rights. When his case was called, the Justice Court more specifically advised him of his rights. Nelson stated he wanted to plead guilty and signed a waiver of right to counsel. The Justice Court accepted his guilty plea and sentenced him.

3. ¶After his release, Nelson sought the advice of counsel. On August 22, 1997, he filed a motion to withdraw his guilty plea and the Justice Court subsequently denied the motion.

4. ¶Nelson immediately filed a notice of appeal in the District Court. He moved to

withdraw the guilty plea he had entered in the Justice Court and, after a hearing, the District Court denied his motion. Nelson appeals the District Court's denial of his motion to withdraw his guilty plea.

## *STANDARD OF REVIEW*

1. ¶We review a court's refusal to allow a defendant to withdraw a guilty plea for abuse of discretion; absent an abuse of that discretion, we will not disturb the court's decision. *State v. Skroch* (1994), 267 Mont. 349, 352, 883 P.2d 1256, 1259 (citations omitted). In determining whether a district court abused its discretion in denying a defendant's motion to withdraw a guilty plea, we consider the following three factors:

(1) the adequacy of the court's interrogation at the time the plea was entered regarding the defendant's understanding of the consequences of the plea;

(2) the promptness with which the defendant attempts to withdraw the plea; and

(3) the fact that the [defendant's] plea was the result of a plea bargain in which the guilty plea was given in exchange for dismissal of another charge.

*State v. Schaff*, 1998 MT 104, ¶ 18, 288 Mont. 421, ¶ 18, 958 P.2d 682, ¶ 18 (citations omitted).

## *DISCUSSION*

1. **¶Did the District Court abuse its discretion in denying Nelson's motion to withdraw his guilty plea?**
2. ¶The parties agree that Nelson's motion to withdraw his guilty plea was timely and that no plea agreement was involved. Therefore, the second and third factors in our review of the court's decision are not at issue here. Nelson contends, however, that the Justice Court's interrogation regarding his understanding of the consequences of his plea was inadequate.

3. ¶With respect to the first factor, a trial court's interrogation of a defendant seeking to enter a guilty plea is sufficient if the judge

"examines the defendant, finds him to be competent, and determines from him that his plea of guilty is voluntary, he understands the charge and his possible punishment, he is not acting under the influence of drugs or alcohol, he admits his counsel is competent and he has been well advised, and he declares in open court the fact upon which his guilt is based."

*Skroch*, 267 Mont. at 354, 883 P.2d at 1260 (quoting *State v. Mahoney* (1994), 264 Mont. 89, 94-95, 870 P.2d 65, 69). Relying on this Court's long standing principle that "[a] plea of guilty should be entirely voluntary, by one competent to know the consequences, and should not be induced by fear, persuasion, promise, or ignorance" (*State v. McBane* (1954), 128 Mont. 369, 371, 275 P.2d 218, 219 (citations omitted)) and pointing out that he was not represented by counsel, Nelson advances a number of theories in contending that the Justice Court's interrogation relating to the voluntariness of his plea was inadequate.

1. ¶Nelson first contends his plea was not voluntary because he was not adequately advised of his rights, the charge against him and the maximum penalty. Relying on *State v. Jenni* (1997), 283 Mont. 21, 25, 938 P.2d 1318, 1321, where we determined the city court record generally indicated that the defendant was informed of his rights but did "not delineate the *specific* rights of which he was advised," Nelson urges that the Justice Court record is insufficient to establish the adequacy of that court's advisements.

2. ¶The Justice Court record before us, however, is distinguishable from the city court record in *Jenni*. Here, the record contains a checklist on which the court indicated that it advised the defendant of each of the specific rights listed--including the right to remain silent, the right to have the charges against him proved beyond a reasonable doubt, the right to a trial, and the right to confront witnesses against him and produce evidence in his own defense--and one right--the right to one jury trial either in justice court or on appeal to the district court--added by handwritten notation, as well as the maximum possible penalty and a caution that a guilty plea cannot be appealed. The court also checked off that it determined the defendant understood his rights and the charge against him. Moreover, during the District Court hearing on Nelson's motion to withdraw his guilty plea, Justice of the Peace

Scott Wyckman, before whom Nelson was arraigned, testified that it was his habit to collectively advise the detainees of these rights, and Nelson testified that he remembered the judge reading the charge against him and advising him of the maximum possible penalty.

3. ¶Nelson next asserts that the Justice Court did not advise him of his right to obtain pretrial release, urging that this failure to advise resulted in an involuntary guilty plea entered in reliance on Detention Center information that he could not post bond on the charge of partner or family member assault. Although the Justice Court should have advised Nelson regarding the circumstances under which he could obtain pretrial release, this requirement arises under § 46-7-102(1)(d), MCA, which applies to initial appearances rather than to the acceptance of guilty pleas. Nelson did not challenge the lack of proper procedure during his initial appearance under § 46-7-102(1)(d), MCA, in the District Court and has not done so on appeal. Instead, he relied--and continues to rely--on § 46-12-210(1), MCA, which specifies the rights of which a defendant must be advised before a plea of guilty can be accepted, and which does not include rights regarding pretrial release. Therefore, no issue involving § 46-7-102(1)(d), MCA, is before us.

4. ¶Nelson also suggests that the Justice Court record erroneously indicates he was represented by counsel and, on that basis, he urges that the Justice Court record is inaccurate and unreliable. We disagree that the record indicates that Nelson was represented by counsel. The line in question reads "[d]efendant appeared / / pro se; / / with counsel _____." The "with counsel" box was marked, but "with counsel" was lined out, and the court wrote "in custody" on the blank line. This portion of the record indicates that defendant appeared while in custody. It does not say that Nelson appeared with counsel. Thus, Nelson has not established that the Justice Court record is inaccurate or unreliable.

5. ¶As an additional argument that his plea was not voluntary, Nelson asserts the Justice Court did not use its form entitled Acknowledgment of Waiver of Rights by Plea of Guilty in accepting his guilty plea. However, while § 46-12-210(2), MCA, provides that a defendant's understanding of the charge, the maximum penalty and his rights *may* be accomplished by the defendant filing a written acknowledgment of waiver of rights, neither the statute nor our case law requires the use of such a form to establish the voluntariness of a guilty plea. Therefore, the Justice Court's failure to use its written acknowledgment form does not render Nelson's guilty plea involuntary.

6. ¶Nelson next asserts that his guilty plea was not voluntary because he had little sleep the night before and was confused throughout the entire arraignment

proceeding at which he entered a guilty plea. At the time he entered his guilty plea, however, the Justice Court determined--and indicated in the record--that Nelson understood his rights and the charge against him, stated sufficient facts to satisfy the elements of the charge, and entered his plea knowingly and voluntarily. Additionally, Judge Wyckman testified Nelson was given an opportunity to clarify any misunderstandings he may have had, but did not attempt to do so. While the dissent suggests that Nelson cannot be expected to inquire about pretrial release after being informed by Detention Center personnel that it was unavailable, Nelson did not raise *any* confusion or questions in the Justice Court in response to the opportunity provided for him to do so. He simply pled guilty and recited the events leading to his arrest.

7. ¶Moreover, Nelson testified about events at the Detention Center during the District Court hearing on his motion to withdraw his guilty plea, including what time he ate breakfast and how many other detainees were taken to the Justice Court with him. He also recited the maximum penalty for the charged offense. Nelson's specific recall of certain events at the time in question does not support his assertion that he was confused because of lack of sleep when he entered his guilty plea.

8. ¶Finally, relying on *State v. Doty* (1977), 173 Mont. 233, 566 P.2d 1388, Nelson argues that the absence of his counsel at the time he entered his plea renders the guilty plea involuntary. We disagree.

9. ¶In *Doty*, the defendant appeared with counsel and entered a not guilty plea. *Doty*, 173 Mont. at 234, 566 P.2d at 1389. A few days before trial, the defendant met with the prosecutor without his counsel and, two hours later, appeared in justice court and changed his plea to guilty. The court accepted his guilty plea and sentenced him. *Doty*, 173 Mont. at 235, 566 P.2d at 1390. The defendant subsequently moved the justice court to withdraw his guilty plea and his motion was denied. *Doty*, 173 Mont. at 235-36, 566 P.2d at 1390. On appeal, the district court reversed the justice court and remanded for a trial on the merits. *Doty*, 173 Mont. at 236, 566 P.2d at 1390.

10. ¶The State then petitioned this Court to exercise supervisory control and direct the district court to enter an order affirming the justice court's denial of the defendant's motion to withdraw a guilty plea. We declined to do so. *Doty*, 173 Mont. at 238, 566 P.2d at 1391. The justice court record from the change of plea proceeding indicated the defendant had actively sought the advice of his counsel of record before both meeting with the prosecutor and changing his plea; he also steadfastly maintained his innocence until the moment he changed his plea. In addition, both the prosecutor and the justice court were aware that the defendant was represented by counsel of record and, yet, the justice court failed to ascertain if the defendant had consulted

his attorney and the reason his attorney was not present. *Doty*, 173 Mont. at 237, 566 P.2d at 1391. On that basis, we determined there was serious doubt regarding the voluntariness of the plea. *Doty*, 173 Mont. at 237-38, 566 P.2d at 1391.

11. ¶The facts in the present case are distinguishable from *Doty*. In *Doty*, the defendant had previously appeared with an attorney and his representation by counsel was a matter of record. Here, Nelson was making his first appearance before the Justice Court. Moreover, although Nelson asserts that he made it clear at his arraignment that he was represented by counsel, his testimony at the District Court hearing on his motion to withdraw his guilty plea was that he told the Justice Court he did not feel he needed an attorney or that he thought he told the Justice Court he could not reach his attorney. In either case, he did not have an attorney of record as was the case in *Doty*.

12. ¶Furthermore, Nelson recalled being asked at the time of his arraignment in Justice Court if he wanted a lawyer and signing a waiver which he understood to "waive [his] rights to have an attorney present with [him]." We conclude that Nelson voluntarily and knowingly waived his right to counsel. Having done so, Nelson cannot now rely on his lack of counsel to establish that his guilty plea was not voluntary.

13. ¶We conclude that Nelson entered his guilty plea voluntarily. On that basis, we hold that the District Court did not abuse its discretion in denying Nelson's motion to withdraw his guilty plea.

14. ¶Affirmed.


/S/ KARLA M. GRAY


We concur:


/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ JIM REGNIER

Justice W. William Leaphart, dissenting.

1. ¶I dissent on the issue of whether Nelson was advised of his right to pretrial release on bail.

2. ¶ It is undisputed that while Nelson was in the Detention Center, jail personnel advised him that he could not post bail on the charge of partner or family member assault. Section 46-9-302(1), MCA. Nelson contends that, having been so advised, he was under the misimpression that the only way he could obtain release from jail was to plead guilty and get the matter concluded.

3. ¶Section 46-9-302(1), MCA, provides that "[a] person may not be released on bail without first appearing before the judge when the offense is any assault on a partner or family member . . . ."

4. ¶Section 46-7-102(1)(d), MCA, requires that a defendant be advised upon initial appearance of "the general circumstances under which the defendant may obtain pretrial release[.]" Although Nelson was advised of numerous rights listed on the Justice Court's "checklist," he was not advised by the court that release on bail was a possibility that could be discussed in his appearance before the judge. The State contends that, if Nelson was confused about the possibility of release on bail, the burden was on him to make inquiry of the judge for clarification. I disagree. The law does not presume that a defendant will know what questions to ask the court. Rather, the statute clearly puts the onus on the court to advise the defendant of his rights with regard to pretrial release on bail. This obligation is particularly compelling in a situation, such as this, where the defendant has previously been advised that he cannot be released on bail and has no reason to question that advice.

5. ¶The Court's opinion points out that § 46-7-102(1)(d), MCA, applies to initial appearances rather than to the acceptance of guilty pleas. However, if a defendant, having not been properly advised of his rights regarding release on bail, enters a plea of guilty in order to obtain release from jail, it cannot be said that his plea is voluntarily entered. The Justice Court's failure to comply with § 46-7-102(1)(d), MCA, at the initial appearance, taints the voluntariness of the plea subsequently accepted by the District Court.

6. ¶I would reverse and allow Nelson to withdraw his guilty plea.

/S/ W. WILLIAM LEAPHART

Justice Terry N. Trieweiler and Justice William E. Hunt, Sr., join in the foregoing dissenting opinion.

/S/ TERRY N. TRIEWEILER

/S/ WILLIAM E. HUNT, SR.