FILED

04/29/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0567

DA 22-0567

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 89

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

LESLIE DEAN ERNST,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 13-800
Honorable Donald L. Harris, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Gregory E. Paskell, Attorney at Law, Lynnwood, Washington

      For Appellee:

          Austin Knudsen, Montana Attorney General, Christine Hutchison, Assistant Attorney General, Helena, Montana

          Scott D. Twito, Yellowstone County Attorney, Billings, Montana

Submitted on Briefs:  February 12, 2025

Decided:  April 29, 2025

Filed:

_____
Clerk

Chief Justice Cory J. Swanson delivered the Opinion of the Court.

¶1 Leslie Dean Ernst pleaded guilty to five felony counts of Privacy in Communications in violation of § 45-8-213(1)(a), MCA. He later moved to withdraw his guilty pleas and to reduce two of the felony convictions to misdemeanors, which the District Court denied. Ernst appeals the District Court order. We affirm.

¶2 Ernst raises seven issues on appeal which we combine and restate as follows:

*Issue One: Whether Ernst was charged, convicted, or sentenced based on an unconstitutional statute.*

*Issue Two: Whether the District Court erred in finding Ernst had not met his burden to show his prior convictions were unconstitutional.*

### FACTUAL AND PROCEDURAL BACKGROUND

¶3 Ernst has a bachelor's degree in psychology and has nearly completed both a master's degree and PhD degree in psychology. In November 2004, Ernst, then 44, began messaging online with A.J., a high school student in Billings, under several different screen names.[1] Ernst claimed to be a 27-year-old male named Dean, and the two corresponded online and over the telephone. Several days later, Ernst demanded A.J. come over to his house the next day or "she would not like the consequences." A.J. went but tried to leave when she saw how much older Ernst was. Ernst allegedly raped her. A.J. reported Ernst to police after he called her and threatened her several times over the next few days. No charges were filed in 2004 against Ernst.

---

[1] Because Ernst pleaded guilty to some crimes and not others, the facts are recounted from the charging documents as alleged or admitted.

¶4 A.J. continued to receive harassing phone calls and online messages from different phone numbers and screen names for the next few years. She made another report to law enforcement in 2008, believing the ongoing contacts came from Ernst. No charges were filed in 2008 against Ernst.

¶5 Detective Baum at the Billings Police Department learned of A.J.'s complaints against Ernst. In February 2010, someone portraying Ernst's ex-girlfriend "Carrie" started messaging A.J. online. After Detective Baum contacted A.J., she gave the police permission to pose online as her and talk with "Carrie." "Carrie" said Ernst had told her he masturbated thinking about his victims and was "turned on" by the idea of being reported to the police. Officers posing as A.J. also had conversations with several other threatening online personas believed to be Ernst. A.J. received a permanent order of protection against Ernst, ordering him, inter alia, not to harass, annoy, telephone, email, or otherwise contact or communicate with A.J. The messages from online personas and restricted calls continued through 2013.

¶6 In July 2013, Detective Baum learned Ernst was a suspect in another telephone harassment campaign towards J.J., using one of the same phone numbers that was contacting A.J. The text messages stated "he wanted J.J.'s pussy," they "used to talk" when she was 19, and she had gotten him in trouble. J.J. instantly knew the person was Ernst because she had filed a police report in 1994 against him for making sexually harassing phone calls. J.J. also received a friend request on Facebook from one of the same accounts trying to contact A.J.

3

¶7     In October 2013, the State filed three counts against Ernst because of his actions towards A.J. and J.J.: Count I, Sexual Intercourse Without Consent (SIWOC), a felony in violation of § 45-5-503, MCA; Count II, Stalking, a felony in violation of § 45-5-220(1)(b), MCA; and Count III, Privacy in Communications, a felony[2] in violation of § 45-8-213(1)(a), MCA.

¶8     After Ernst was arrested, the Billings Gazette posted an article with his picture. T.M., then 29, recognized him and reported to police Ernst had allegedly raped her in 2012. Ernst began communicating with T.M. online and over the telephone pretending to be a 29-year-old man, "Todd." Ernst had previously dated T.M.'s mother. T.M. divulged to "Todd" that Ernst had molested her when she was 8 years old. "Todd" suggested she get back at Ernst. He became obsessed with asking about the molestation and only wanted to talk about Ernst. He concocted a plan where he would sneak into Ernst's house and drug Ernst so T.M. could have sex with him and accuse him of rape. She discussed the plan with "Todd" but did not have any intention of following through with it. When T.M. told him she was not going to follow through with his plan, "Todd" said he would tell Ernst about the plan and convinced her she would go to jail. "Todd" told her the only way he would not report her was if she had sex with Ernst, which she allegedly did without consent.[3] Ernst eventually admitted to her he was "Todd."

---

[2] The State charged this as a felony because Ernst had two or more prior convictions under subsections (1)(a), (1)(b), or (1)(d). *See* § 45-8-213(4)(c), MCA.

[3] Consent must be freely given, and lack of consent may be inferred based on all the surrounding circumstances. Section 45-5-501(1)(a), MCA.

¶9 A.R. also reported a series of harassing and creepy text messages, phone calls, and online messages she had received from some of the same numbers used to contact A.J. A.R. had previously worked with Ernst and reported he had sexually harassed her. B.C. and A.B., who also worked with Ernst, reported very similar situations. In March 2015, the State filed a Second Amended Information adding four more counts for Ernst's actions towards T.M., A.R., B.C., and A.B.: one additional SIWOC count and three more counts of Privacy in Communications.

¶10 In November 2016, the State and Ernst entered into a plea agreement. The State agreed to charge, and Ernst agreed to plead guilty to, five counts of Privacy in Communications. The State agreed to dismiss the two SIWOC counts and one Stalking count and to bring no further legal action for conduct the State was aware of and had already investigated. The State also agreed to recommend a total sentence of 25 years at Montana State Prison (MSP), no time suspended, with a 15-year parole restriction for the five charges. Ernst agreed he waived the right to force the State to prove its case beyond a reasonable doubt and to appeal his conviction, which he confirmed at the change of plea hearing.

¶11 At Ernst's first sentencing in 2017, the District Court followed the State's recommendation, sentencing Ernst to a total sentence of 25 years at Montana State Prison with a 15-year parole restriction. Ernst appealed. After it was discovered the sentencing transcript had not been recorded, Ernst filed an unopposed motion to remand for resentencing, which we granted. *State v. Ernst*, No. DA 17-0504, Order (Mont. May 22, 2018).

¶12 Prior to resentencing, Ernst filed a motion to withdraw his guilty pleas pursuant to § 46-16-105(2), MCA. He alleged, among other things, he pleaded guilty to offenses that were constitutionally void pursuant to our holding in *State v. Dugan*, 2013 MT 38, 369 Mont. 39, 303 P.3d 755. After a hearing, the District Court denied Ernst's motion.

¶13 Ernst then filed a motion seeking to reduce two of his felony Privacy in Communications convictions to misdemeanors because his prior Privacy in Communications convictions were under a statute later declared to be unconstitutional in part by *Dugan*. At a hearing on the matter, Ernst discussed two prior convictions under the statute in 1984 that were deferred and dismissed. However, the State did not attempt to use those as prior valid convictions for purposes of charging the current offenses as felonies. Ernst also admitted to a misdemeanor conviction in 1991 and another in 1994. Finally, Ernst acknowledged four more felony convictions under the statute in 1995. The District Court denied Ernst's motion, finding he had previously been convicted of two misdemeanor counts and four felony counts of Privacy in Communications and he had failed to show any of them were constitutionally infirm.

¶14 After a two-day sentencing hearing, the District Court sentenced Ernst to a total sentence of 25 years at MSP, no time suspended, with a 15-year parole restriction. It specifically noted, among other things: the devastating impact Ernst's conduct had had on the multiple victims; the vile, disgusting, insulting comments Ernst made to the victims "clearly designed to harass and offend and annoy [the victims] and can have no other purpose"; the length of time Ernst's conduct continued; his prior felony convictions for the same type of conduct and the lack of rehabilitation from prior sentences; the level of deceit

6

and manipulation involved; the sadistic qualities of his behavior; the need to protect the public from Ernst; and the dismissed SIWOC and stalking counts.

¶15 Ernst appeals the District Court's orders denying his motion to withdraw his guilty pleas and denying his request to sentence two of the felonies as misdemeanors.

**STANDARD OF REVIEW**

¶16 Whether a guilty plea was voluntary is a mixed question of law and fact we review de novo. *State v. Warclub*, 2005 MT 149, ¶ 17, 327 Mont. 352, 114 P.3d 254. Whether a prior conviction may be used for a sentence enhancement is generally a question of law reviewed de novo. *State v. Maine*, 2011 MT 90, ¶ 12, 360 Mont. 182, 255 P.3d 64. Factual findings relating to the prior convictions will not be disturbed, however, unless they are clearly erroneous. *Maine*, ¶ 12.

¶17 We review a court's denial of a motion to withdraw a guilty plea for abuse of discretion, considering (1) the adequacy of the court's interrogation regarding the defendant's understanding of the consequences of the plea; (2) the promptness with which the defendant attempts to withdraw the plea; and (3) whether the plea was the result of a plea bargain in which the plea was given in exchange for dismissal of another charge. *State v. Schaff*, 1998 MT 104, ¶ 18, 288 Mont. 421, 958 P.2d 682, *overruled in part on other grounds by State v. Deserly*, 2008 MT 242, ¶ 12 n.1, 344 Mont. 468, 188 P.3d 1057.

## DISCUSSION

¶18 *Issue One: Whether Ernst was charged, convicted, or sentenced based on an unconstitutional statute.*

¶19 In 2013, the Privacy in Communications statute Ernst was charged under read as follows:

> (1) Except as provided in [§] 69-6-104, a person commits the offense of violating privacy in communications if the person knowingly or purposely:
>     (a) with the purpose to terrify, intimidate, threaten, harass, annoy, or offend, communicates with a person by electronic communication and uses obscene, lewd, or profane language, suggests a lewd or lascivious act, or threatens to inflict injury or physical harm to the person or property of the person. *The use of obscene, lewd, or profane language or the making of a threat or lewd or lascivious suggestions is prima facie evidence of an intent to terrify, intimidate, threaten, harass, annoy, or offend.*

Section 45-8-213(1)(a), MCA (2013) (emphasis added). We held in *Dugan*, ¶ 63, that the italicized language above was unconstitutionally overbroad. We then held "[w]ith the prima facie provision invalidated, Montana's Privacy in Communications statute legitimately encompasses only those electronic communications made with the purpose to terrify, intimidate, threaten, harass, annoy, or offend. Such communications can be proscribed without violating the Montana and United States Constitutions." *Dugan*, ¶ 64. We also held the statute was not unconstitutionally vague. *Dugan*, ¶ 72. Nevertheless, the prima facie provision remained in the statutory language of § 45-8-213(1)(a), MCA, until the Legislature repealed it in 2019. 2019 Mont. Laws ch. 243, § 1.

¶20 Ernst argues because his charging documents, plea agreement, and sentencing did not explicitly exclude the unconstitutional prima facie provision, he was therefore convicted and sentenced under an unconstitutional law.

8

¶21    Ernst's arguments fail to consider the plain language of those documents, all of which show he was not convicted under the unconstitutional portion of the statute. All three Informations charging Ernst with violations of Privacy in Communications alleged Ernst "knowingly or purposely *with the purpose to* terrify, intimidate, threaten, harass, annoy, or offend, communicated with a person by electronic communication and used obscene, lewd, or profane language." (Emphasis added.) The affidavits in support detailed a multi-year campaign by Ernst that showed a purpose to harass his victims. Ernst pleaded guilty to five counts of Privacy in Communications as charged, which specified he had a purpose to terrify, etc., his victims. The charging documents were sufficient. *See State v. Hoctor*, 2011 MT 251, ¶ 16, 362 Mont. 215, 262 P.3d 1089. Nor does Ernst point to anything during sentencing that shows the court relied on an unconstitutional presumption to sentence him. We are unpersuaded by Ernst's arguments he was convicted and sentenced under an unconstitutional presumption just because the statutory language still included the presumption.

¶22    Ernst further argues he never admitted it was his intent to harass, annoy, or offend his victims—only that his repeated contacts did harass, annoy, or offend his victims.[4] Thus,

---

[4] The factual bases for Ernst's guilty pleas were substantially similar for each count. *E.g.*:

> [Defense Counsel]: Um, Mr. Ernst, um, as to Count I, from approximately November of 2004 up until August of 2013, uh, did you contact an individual whose initials are A.J.?
>
> DEFENDANT: Yes.
>
> [Defense Counsel]: And did you make that contact via phone text messaging and Yahoo Chats?

9

Ernst contends the colloquy was insufficient to prove every element of the offense. "[T]he court must ascertain, from admissions made by the defendant at the plea colloquy, that the acts of the defendant, in a general sense, satisfy the requirements of the crime to which he is pleading guilty." *State v. Wise*, 2009 MT 32, ¶ 14, 349 Mont. 187, 203 P.3d 741 (internal quotation omitted); *see also State v. Robinson*, 2009 MT 170, ¶ 15, 350 Mont. 493, 208 P.3d 851; *Schaff*, ¶¶ 21–25 (holding absence of an admission as to mental state does not, in itself, render a colloquy inadequate and a plea involuntary). The existence of a mental state may be inferred from circumstantial evidence, including the acts of the accused and facts and circumstances surrounding the offense. *Schaff*, ¶ 24.

¶23    At the colloquy, the District Court heard evidence that Ernst had repeatedly messaged at least six different women over a number of years—including prior victims of his—using obscene and lewd language knowing the contact harassed, annoyed, and offended his victims. This is sufficient circumstantial evidence that Ernst had the purpose to terrify, intimidate, threaten, harass, or injure his victims. *Accord Schaff*, ¶ 25. The court specifically found during sentencing that Ernst's actions were "intended to offend, intimidate and coerce these victims." In denying Ernst's motion to withdraw, the District Court found there was no question Ernst purposely used obscene and lewd language to

---

DEFENDANT: Yes.

[Defense Counsel]: And in that contact, did you use obscene or lewd language?
DEFENDANT: I did.

[Defense Counsel]: And do you agree that that contact and the use of the language harassed, annoyed, and offended A.J.?

DEFENDANT: I agree.

repeatedly harass, annoy, and offend his victims. The court did not sentence Ernst illegally or err in denying Ernst's motion to withdraw.[5]

¶24 *Issue Two: Whether the District Court erred in finding Ernst had not met his burden to show his prior convictions were unconstitutional.*

¶25 Although two of Ernst's prior convictions for Privacy in Communications were deferred and dismissed, the State presented evidence that Ernst had been previously convicted of two additional misdemeanor counts of Privacy in Communications and four felony counts in 1991, 1994, and 1995. Ernst claims all six prior convictions were unconstitutionally infirm under *Dugan* and thus cannot be the basis for sentencing him to two of the five felony counts. *See* § 45-8-213(4)(c), MCA (third or subsequent convictions punishable as felony not to exceed five years in prison).

¶26 "A presumption of regularity attaches to a prior criminal conviction that is used to enhance punishment." *Robinson*, ¶ 21. The prior conviction is presumed to be valid unless the defendant presents direct evidence of irregularity. *Robinson*, ¶ 21. Once a defendant presents such direct evidence, the burden then shifts to the State to prove by a preponderance of the evidence that it did not obtain the prior conviction in violation of the defendant's rights. *State v. Mann*, 2006 MT 33, ¶ 15, 331 Mont. 137, 130 P.3d 164; *see also Maine*, ¶¶ 13, 33 (collecting cases). "Direct evidence" includes evidence that

---

[5] Ernst also argues he received ineffective assistance of counsel when counsel failed to clarify whether the State charged Ernst under the constitutional or unconstitutional portion of the statute. Because we hold Ernst was not charged, convicted, or sentenced under the unconstitutional portion of the statute, Ernst cannot show counsel acted deficiently, or that he was prejudiced. *See Whitlow v. State*, 2008 MT 140, ¶ 10, 343 Mont. 90, 183 P.3d 861.

proves a fact without an inference or presumption and which, if true, establishes that fact. *Mann*, ¶ 16 (citing § 26-1-102(5), MCA).

¶27 In *Mann*, the defendant overcame the presumption of regularity by averring he had not knowingly waived his right to counsel in his prior convictions because the waiver contained an incorrect statement of the law. *Mann*, ¶¶ 23–24. Similarly, in *State v. Okland*, 283 Mont. 10, 19, 941 P.2d 431, 437 (1997), the defendant showed by affidavit that his prior conviction was infirm because he had requested an attorney, could not afford one, and was not provided one. *Mann*, ¶ 22.

¶28 Here, Ernst has not overcome his burden to show his six prior convictions for Privacy in Communications were infirm. Ernst asserted at the District Court that the State had not overcome its burden to show he had at least two prior valid convictions for Privacy in Communications. Additionally, Ernst argued his prior convictions should be presumed unconstitutional because of *Dugan* and because there was "an utter lack of information in the record as to . . . whether the convictions were based on the" unconstitutional portion of the statute.

¶29 This argument misconstrues the presumption of regularity and the defendant's burden in overcoming it. Here, the State showed Ernst had at least six prior convictions under the statute.[6] A presumption of regularity attaches to those convictions and Ernst has

---

[6] Ernst's reliance on *State v. Krebs*, 2016 MT 288, 385 Mont. 328, 384 P.3d 98, is misplaced. There, the defendant was challenging the fact of a prior conviction, which is the State's burden to show. *Krebs*, ¶ 19. The State has shown six prior convictions here. Ernst argues the prior convictions are constitutionally infirm. Ernst has the burden to show their infirmity. *Krebs*, ¶¶ 11-12.

the burden of showing direct evidence of an irregularity—i.e., that he was convicted based on the unconstitutional presumption. *Robinson*, ¶ 21. Ernst argues the record is devoid of information showing the prior convictions were constitutional. This argument demonstrates he has not met his burden of showing the prior convictions were irregular. *Maine*, ¶ 32.

> [T]o meet his or her burden of proof, the defendant may not simply point to an ambiguous or silent record, but must come forward with affirmative evidence establishing that the prior conviction was obtained in violation of the Constitution. Self-serving statements by the defendant that his or her conviction is infirm are insufficient to overcome the presumption of regularity and bar the use of the conviction for enhancement.

*Maine*, ¶ 34. Ernst provides no direct evidence to show his six prior convictions were based on the unconstitutional presumption. Ernst merely states the record shows he has six prior convictions under § 45-8-213(1)(a), MCA, which *Dugan* found partially unconstitutional. But Ernst does not provide any evidence—let alone direct evidence—that his prior convictions were based on the prima facie provision later found to be unconstitutional. The presumption of regularity presumes these six prior convictions were valid. The District Court did not err in sentencing Ernst to five felony counts.

## CONCLUSION

¶30 Ernst was charged, convicted, and sentenced pursuant to the constitutional portion of § 45-8-213(1)(a), MCA. He has not shown counsel was ineffective or overcome the presumption of regularity in challenging his prior convictions used as a sentencing enhancement. We have reviewed Ernst's remaining arguments and have determined they are without merit.

¶31     Affirmed.

                                        /S/ CORY J. SWANSON

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ KATHERINE M BIDEGARAY
/S/ BETH BAKER
/S/ JIM RICE